2012 WY 140

BJ HOUGH, LLC, Leo L. Garcia, Mary D. Garcia, Francis Shive, Rawley D. Marrs, Donella L. Marrs, Norman Pring, Mary Jane Pring, Kathleen Sheehan, Kenneth J. Racine, Rena J. Racine, Appellants, (Petitioners),

v.

CITY OF CHEYENNE, a Wyoming municipal corporation and Swan Ranch, LLC, Appellees (Respondents).

No. S–11–0180.

Supreme Court of Wyoming.

Nov. 1, 2012.

den, LLC, Cheyenne, WY. Argument by Ms. Woodhouse.

Representing Appellees: Daniel E. White, City Attorney, for Appellee City of Cheyenne. Argument by Mr. White. No appearance entered for Appellee Swan Ranch.

Before KITE, C.J., and GOLDEN **, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] After Swan Ranch was annexed by the City of Cheyenne ("the City") in 2009, the Appellants herein filed a declaratory judgment action against the City alleging that the annexation was invalid under Wyo. Stat. Ann. § 15-1-402(a). Ultimately, the district court granted the City's responding summary judgment argument on two claims and conducted trial on the third and final claim. Following trial, the district court found the annexation was proper. This appeal followed.

## ISSUE

[¶ 2] We restate the Appellants' issues as a single question: Did the district court err in finding the annexation ordinance valid?

## FACTS

[¶ 3] In September of 2008, Swan Ranch, LLC, filed a petition to annex approximately 150 acres of land to the City. Swan Ranch is undeveloped property and is "open space" generally used for grazing livestock. The property is not serviced by the City with sewer, water, or sanitation. The owner of Swan Ranch had agreed with an outside developer that it would apply for annexation to the Cheyenne City Council. In return, the developer paid Swan Ranch's annexation expenses. On January 12, 2009, after public hearings and findings from the Urban Planning Director for the City, City Ordinance No. 3840 was adopted on January 12, 2009 annexing the Swan Ranch land to the City.

[¶ 4] In response to the annexation, neighbors to the land being annexed, herein

Representing Appellants: Gay V. Woodhouse and Teri Cassidy * of Woodhouse Ro-

\* Order Allowing Withdrawal of Counsel entered March 14, 2012.

\*\* Justice Golden retired effective September 30, 2012.

the Appellants, filed an "Appeal Pursuant to W.S. 15–1–409 and Complaint for Declaratory Judgment" against the City on March 6, 2009. The Appellants amended said complaint on March 18, 2009 to add the names of two parties. The complaint contained three claims for relief: In their first and third claims, the Appellants alleged that a Cheyenne City ordinance constituted an exercise of extra-territorial jurisdiction under Wyo. Stat. Ann. § 15–3–202(b)(ii) (LexisNexis 2011).

[¶ 5] On June 1, 2010 the City filed a motion for partial summary judgment on Appellants' first and third claims, and on July 19, 2010 the Appellants filed their response opposing that summary judgment motion asking the court "whether the City exercised extraterritorial jurisdiction over lands adjacent to the annexed property so as to require compliance with certain notice and platting requirements contained in Wyoming annexation statutes" and whether the City had properly prepared its annexation map. After some consideration, the district court granted the City's motion for partial summary judgment stating in its decision letter that the City had properly given notice and properly prepared its map. Thus, the first and third claims were disposed of, and those claims remain unchallenged on appeal.

[¶ 6] Regarding the single remaining issue—whether the City had met the statutory requirements for annexation under Wyo. Stat. Ann. § 15–1–402—the district court held a bench trial. Following the three-day trial, the court found in the City's favor stating that it had met the statutory requirements necessary for annexation. This appeal followed. More facts will be discussed as necessary in the discussion to follow.

## DISCUSSION

[¶ 7] Although Appellants present two claims to this Court, we see this appeal differently. Viewing it through our case law and statutory scheme, we distinguish the issue on appeal as a single question: whether the district court properly found in the City's favor that it had met the statutory requirements necessary for annexation or, stated another way, whether the district court prop-

erly decided the declaratory judgment action in the City's favor as to the validity of the ordinance.

[¶ 8] Given our limited review, the standard of review of this Court is typical of that of a bench trial:

Following a bench trial, this Court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005) (citing *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) and *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo. 1999)).

The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004). Further,

we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

*Id.* (quotation marks omitted) (some citations omitted).

*Pennant Serv. Co. v. True Oil Co., LLC,* 2011 WY 40, ¶ 7, 249 P.3d 698, 702–03 (Wyo.2011).

[¶ 9]   To explain our result and our limited review on appeal, we begin with our statutes and case law. Wyo. Stat. Ann. § 15–1–409(a) (LexisNexis 2011) provides as follows:

(a) If any landowner in the territory proposed to be annexed or any owner of real property in the annexing city or town, or utility is aggrieved by the acts of the governing body, he may *appeal* to the district court for a *review* of the acts or findings thereof. [Emphasis added.]

(b) If the court determines that the action taken was capricious or arbitrary, or if it appears from the evidence that the landowner's right in his property is being unwarrantedly invaded or that the governing body abused its discretion, the court shall declare the annexing ordinance void. If the court determines the action of the governing body was proper and valid, it shall sustain the ordinance.

(c) All proceedings to review the findings and the decisions of the governing body or actions to determine the validity of the annexation ordinance pursuant to the Uniform Declaratory Judgments Act shall be brought within sixty (60) days of the effective date of the annexation ordinance, and if not brought within that time are forever barred.

[¶ 10]   This statute, in section (a), only provides for an appeal of the annexation ordinance to the district court only by aggrieved landowners *in the territory to be annexed or within the city.* Section (b) requires that the district court review the acts or findings of the city, and declare the ordinance void if it finds such to have been capricious, arbitrary, an unwarranted invasion of property rights, or an abuse of discretion. Further reading of the same statute, in section (c), shows that our statutory scheme requires the above-described appeal, as well as any declaratory judgment actions, to be brought within 60 days of the effective date of the ordinance.

[¶ 11]   Applying this statute to the facts of this case preliminarily, we can immediately conclude that the Appellants herein were not qualified to appeal to the district court the City's decision to annex Swan Ranch, given that they are not landowners within the Swan Ranch boundary, nor are they landowners within the Cheyenne city limits. *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 22, 79 P.3d 500, 508 (Wyo.2003).   Turning back to § 15–1–409, section (c) mentions declaratory judgment actions.   That section does not, however, say *who* is entitled to bring a declaratory judgment action, which brings us back to the term "landowner" under § 15–1–409(a) as it applies here.

[¶ 12]   We therefore must consider the status of these landowners within the Declaratory Judgment Act, which grants jurisdiction to the district court to entertain an action for a declaratory judgment to review municipal ordinances.   Such jurisdiction is provided in the Uniform Declaratory Judgment Act, Wyo. Stat. Ann. §§ 1–37–101 through 1–37–115 (LexisNexis 2011).   Section 1–37–102 of the Act gives Wyoming courts the power to "declare rights, status and other legal relations."   Section 1–37–103 provides as follows:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, *municipal ordinance,* contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations. [Emphasis added.]

As quoted in *Smith v. City of Santa Fe,* 2007–NMSC–055, ¶ 14, 142 N.M. 786, 171 P.3d 300, 305 (2007),

the Declaratory Judgment Act is specifically designed to bring an action challenging the constitutionality or validity of local laws or ordinances. *See, e.g., Balizer v. Shaver,* 82 N.M. 347, 349, 481 P.2d 709, 711 (Ct.App.1971) (holding that declaratory proceedings are a proper avenue for testing the constitutionality of municipal ordinances); *see also S. Nat'l Bank of Houston v. City of Austin,* 582 S.W.2d 229, 237 (Tex.Civ.App.1979) (finding declaratory judgment proper where property owners

challenged city ordinance); *Ind. Waste Systems, Inc. v. Bd. of Commrs. of Howard County,* 180 Ind.App. 385, 389 N.E.2d 52, 56 (1979) (holding that a declaratory judgment action was proper to challenge the validity of a county ordinance); *Kmiec v. Town of Spider Lake,* 60 Wis.2d 640, 211 N.W.2d 471, 473 (1973) (holding that a declaratory judgment action was a proper avenue for challenging the validity of an ordinance); *Sorenson v. City of Bellingham,* 80 Wash.2d 547, 496 P.2d 512, 517 (1972) ("The use of declaratory judgment to determine rights in this matter without a course of remedy is entirely appropriate."); *Walker v. Los Angeles County,* 55 Cal.2d 626, 12 Cal.Rptr. 671, 361 P.2d 247, 253 (1961) ("The interpretation of ordinances and statutes are proper matters for declaratory relief."). *See generally* 6 Eugene McQuillin, *The Law of Municipal Corporations,* § 20.23, at 72 (3d ed.); Bernard Schwartz, *Administrative Law* § 9.7, at 537 (2d ed. 1984) ("[T]he declaratory judgment has become the general-utility remedy by which the legality of an administrative act may be determined when there are no statutory review provisions, regardless of the nature of the challenged act.").

[¶ 13] Thus, under our statutes, the Appellants only have standing to bring a declaratory judgment action under § 1–37–103, *to challenge the validity* of an annexation ordinance. ("We thus find that nothing in 15–1–409(a) evidences a legislative intent to preclude declaratory judgment actions challenging the validity of an annexation ordinance. Certainly, the only parties entitled to challenge the merits of the governing body's findings and decisions are those listed within § 15–1–409(a)."). *Cox,* ¶ 27, 79 P.3d at 509. *Cox* is further instructive regarding review by the district court:

Looking to subsection (b) we further see that the review afforded is for abuse of discretion or arbitrariness or capriciousness. Such a review considers, in essence, the merits of the governing body's actions and findings, not the validity of the annexation ordinance. The review afforded also allows for a determination of whether "the landowner's right in his property is being unwarrantedly invaded." Appellants, not being "landowners" under this section, do not have standing to make such a claim. Thus, the only avenue for the protection of their interests is a determination of the validity of the annexation ordinance through a declaratory judgment. Considering the statute as a whole and the context of this right of review following notice and the public hearing, we can see that the legislature's purpose was to present the, named parties with an express right of review to challenge the merits of the governing body's findings and decisions.

*Cox,* ¶ 26, 79 P.3d at 509. Here, the Appellants filed an original and an amended "Appeal Pursuant to W.S. § 15–1–409 and Complaint for Declaratory Judgment." The district court dismissed the first and third claims for relief found in the amended appeal/complaint on the ground that *Cox* forbade them, under the reasoning set forth above, as arguments as to the *merits* of the ordinance. The district court did not, however, dismiss the second claim for relief, on which it held a three-day bench trial, and properly treated as a declaratory judgment action.

[¶ 14] Because the Appellants had no statutory right to appeal in the district court, and that the only matter before the district court was a declaratory judgment action as to the *validity* of the ordinance, that is the only issue before this Court. This Court briefly touched on validity versus merits in *Bd. of County Comm'rs v. City of Cheyenne,* 2004 WY 16, ¶ 10, 85 P.3d 999, 1003 (Wyo. 2004):

We can infer what the legislature intended by the word "aggrieved" by looking to the findings identified in the statute that would require the district court to void the ordinance: the act of annexation was capricious or arbitrary, the municipality abused its discretion, or the landowner's right in his property was unwarrantedly invaded. Wyo. Stat. Ann. 15–1–409(b). We have characterized these findings as going to the merits of the annexation, not to the validity of the ordinance. *Cox v. City of Cheyenne,* 2003 WY 146, ¶ 26, 79 P.3d 500, 509 (Wyo.2003).

In this particular case, because a declaratory judgment action was filed and considered by the district court, the district court had to contemplate the validity of the statutes in its analysis and eventual decision. Therefore, we turn to consider the district court's analysis of the validity of the annexation ordinance as it applies to these facts.

[¶ 15] Wyo. Stat. Ann. § 15–1–404(a)(i) (LexisNexis 2011) sets out specific procedural requirements for annexation, stating in part:

(a) The governing body of any city or town may initiate proceedings to annex territory by the following procedure:

(i) Reasonable evidence shall be procured by the governing body indicating that a specific area meets the conditions and limitations of W.S. 15–1–402[.]

[¶ 16] In Wyoming, the "conditions and limitations" are set forth in Wyo. Stat. Ann. § 15–1–402 (LexisNexis 2011):

(a) Before any territory is eligible for annexation, the governing body of any city or town at a hearing as provided in W.S. 15–1–405 shall find that:

(i) An annexation of the area is for the protection of the health, safety and welfare of the persons residing in the area and in the city or town;

(ii) The urban development of the area sought to be annexed would constitute a natural, geographical, economical and social part of the annexing city or town;

(iii) The area sought to be annexed is a logical and feasible addition to the annexing city or town and the extension of basic and other services customarily available to residents of the city or town shall, within reason, be available to the area proposed to be annexed;

(iv) The area sought to be annexed is contiguous with or adjacent to the annexing city or town, or the area meets the requirements of W.S. 15–1–407;

(v) If the city or town does not own or operate its own electric utility, its governing body is prepared to issue one (1) or more franchises as necessary to serve the annexed area pursuant to W.S. 15–1–410; and

(vi) The annexing city or town, not less than twenty (20) business days prior to the public hearing required by W.S. 15–1–405(a), has sent by certified mail to all landowners and affected public utilities within the territory a summary of the proposed annexation report as required under subsection (c) of this section and notice of the time, date and location of the public hearing required by W.S. 15–1–405(a).

Ultimately, it is the Appellants' burden in this instance to demonstrate that the district court was clearly erroneous in affirming the City Council's decision to annex Swan Ranch. The Appellants do not meet their burden.

[¶ 17] In making that finding, we turn to the facts of this case within the applicable legal framework. The Appellants maintain that although the Cheyenne City Council provided several findings of fact in support of its decision to allow the Swan Ranch annexation, those findings remain "wholly unsupported by evidence and were only remotely related to the standards required in the statute." They argue that the record is devoid of any evidence or testimony supporting the conditions and limitations in § 15–1–402(a)(i)–(iv), and they specifically contend that there was no evidence showing:

a. Annexation prevents the possible contamination of the aquifer;

b. The aquifer in the area was being overused;

c. Annexation prevents the overuse of the aquifer;

d. City water service is available to the annexed property;

e. The City's fire department response time will be increased;

f. The City's fire department response will be more capable of handling emergencies;

g. That the annexation constitutes a natural, geographical and social part of the City;

h. That the balanced investment and growth of the City is desirable;

i. That the annexation offered any potential investment to the City;

j. That the annexation offered any new potential growth to the City;

k. That the City has additional capacity in its sewer mains to handle the annexation;

l. That the number of users of the sewer mains would increase after the annexation;

m. The disputed property is close to existing urban development, increasing the feasibility of the City's infrastructure maintenance;

n. That the annexed property will be developed;

o. That the degree of contiguity with the City is substantial.

[¶ 18] Under § 15–1–402(a)(i), the first requirement for annexation mandates that the City Council find "[a]n annexation of the area is for the protection of the health, safety and welfare of the persons residing in the area and in the city or town." The City presented evidence in support of § 15–1–402(a)(i). As the district court noted, evidence was presented showing that annexation would insure no additional septic systems will be added to the annexed area, and city residents outside the annexed area will benefit by the reduction of the number of septic systems in the area because the potential for contamination of groundwater will be reduced. Furthermore, the court noted that the Swan Ranch area is included in the 201 Agreement, which is intended to protect water quality.[1] Testimony regarding the 201 Agreement indicated that with the annexation of Swan Ranch, installation of septic systems would no longer be permitted. Instead, City Code would require installation of City sewer mains which would reduce the nitrate problem associated with septic systems, thus contributing to the overall health and safety of the residents of the area.

[¶ 19] The Appellants' complaint, however, is that the findings were not specific

enough. Yet, testimony existed to support § 15–1–402(a)(i). For instance, there was distinct evidence that indicated that the Swan Ranch annexation expands the jurisdiction of the City engineer with respect to the Clear Creek drainage master plan to protect against flood hazards within the city and to reduce levels and types of contaminants flowing into Crow Creek.

[¶ 20] Furthermore, testimony also showed that as a result of the annexation, the Cheyenne Fire and Rescue Department would be in charge of hazardous materials response within the annexed territory, thus enhancing the health, safety, and welfare of City residents. Because of its location at the Interstates 25 and 80 intersection, the City of Cheyenne Fire Department's capability to manage disasters of hazardous spills in the area proves to be greater than the Laramie County Fire District's capability. As the district court reiterated,

> [I]t is not necessary for the City to show an immediate impact in this area. Just as Rome was not built in a day, it takes time to fully integrate an annexed parcel.... The Court does not believe that the legislature intended to require a municipality to run water and sewer lines to undeveloped parcels before annexing them because such a requirement would literally put the cart before the horse.

We conclude that the evidence suffices to support the requirement of § 15–1–402(a)(i).

[¶ 21] Regarding Wyo. Stat. Ann. § 15–1–402(a)(ii) (LexisNexis 2011), which requires "[t]he urban development of the area sought to be annexed would constitute a natural, geographical, economical and social part of the annexing city or town," the Appellants assert that substantial evidence did not exist to support this criterion. However, the Appellants seem to suggest that urban development must have taken place before annexation or be imminent after annexation. That is not so. The statute does not make this requirement. Furthermore, in support

---

1. On April 25, 1983 the City of Cheyenne, Laramie County, and the South Cheyenne Water and Sewer District entered into an agreement called "Memorandum of Agreement: Intergovernmental Contract Agreeing to Participate in the Imple-

mentation of the Findings of the 201 Facilities Plan Final Report for the City of Cheyenne, the south Cheyenne water and Sewer District, and Laramie County"—commonly referred to as the "201 Agreement."

of its decision, the district court relied upon evidence showing that the Swan Ranch land creates a link between existing city limits and commercial users located at the Inter-state–25 and College Drive interchange, which users are already being served with City sanitary services pursuant to outside user agreements. The commercial development located at the Interstate–25 and College Drive interchange is characterized as "urban development." As the City points out, PlanCheyenne, the City's comprehensive plan, addresses in extensive detail the vision adopted by the City and County for the Swan Ranch parcel, as well as its surrounding lots. Showing a pattern of growth in that area, the Swan Ranch parcel creates a valid extension of the exiting City of Cheyenne. Furthermore, the City projects growth to the south and west, and testimony indicated that further development in other directions would be limited by terrain, preventing the use of a gravity-operated sewer system. Thus, the south and west development trend seems even more likely. And though the parcel is connected by a relatively small but contiguous boundary, the Appellants here have by all accounts been a part of the community of the City of Cheyenne—thus making the adherence to the City even more natural. As we noted in *Henderson,* land that is within one mile of Cheyenne's boundaries is "potentially urban." 457 P.2d at 501 (citing to the statutory provision currently codified at Wyo. Stat. Ann. § 15–1–411 (LexisNexis 2011)). We conclude that the evidence suffices to support the requirement of § 15–1–402(a)(ii).

[¶ 22] Next, as to the third criteria for annexation under Wyo. Stat. Ann. § 15–1–402(a)(iii) (LexisNexis 2011)—the Appellants suggest that the City Council should have concluded separately that the Swan Ranch parcel is a "logical and feasible addition" to the City and that the extension of services is available to the annexed area. Our review of the record shows that the annexation is a logical and feasible addition to the City, and that the extension of services is also logical and feasible. The district court concluded as much. We base our conclusion upon the evidence in the record and point specifically to the PlanCheyenne document which recommends that the Swan

Ranch annexation be developed in accordance with Mixed–Use Residential Emphasis standards, the category which contemplates urban density development with urban services such as City water and sanitary sewer service. The northern portion of the Swan Ranch annexation, in fact, is designated by PlanCheyenne for future use as parks and recreation space. Parks and open space happens to be designated as appropriate uses in the Mixed–Use Residential Emphasis Category. Also, given that city sanitary lines exist within and immediately adjacent to the Swan Ranch annexation area, and that city water mains could feasibly be extended to the Swan Ranch parcel, the Swan Ranch annexation seems to provide for a logical progression of the City boundary, and the decision of the district court was not clearly erroneous. We conclude that the evidence suffices to support the requirement of § 15–1–402(a)(iii).

[¶ 23] Finally, though the parties agree that the Swan Ranch annexation is contiguous with, or adjacent to, the City of Cheyenne, the Appellants challenge whether the contiguity is sufficient to meet this Court's statement that annexed land "must touch to some substantial degree, although there need not necessarily be a lengthy shared border." *Bd. of County Comm.'s v. City of Cheyenne,* 2004 WY 16, ¶ 31, 85 P.3d 999, 1009 (Wyo.2004). Because the parties agree that Swan Ranch is contiguous with, or adjacent to, the City of Cheyenne, we need not resort to statutory construction here. Instead, we consider what "substantial degree" means to this Court.

[¶ 24] The exact percentage related to "some substantial degree" has never been defined by this Court or otherwise. Indeed, in the instant case many different calculations were presented to the City Council, and it remains unclear upon what, if any, percentage the City Council settled. The district court, however, stated as follows:

    ... the court finds that the degree of contiguity if measured at the right-of-ways of the interstate highways is approximately 13 percent. If measured at the northeast boundary of the property, the percentage

of contiguity is between 6 percent and 10 percent.

[¶ 25] The district court's findings of fact aligned with the City's claims that the Swan Ranch property is approximately 13 percent contiguous. In regard to what substantial contact then means, we refer to this Court's thorough discussion in *Board of County Commissioners*, ¶¶ 20–31, 85 P.3d at 1005–1009 (some citations and footnotes omitted) where we first discussed the meaning of contiguous and then moved toward the term "substantial contact" as a more particularly defined subset of the word contiguous:

> Our standard rules of statutory construction require us first to seek the legislature's intent by looking to the common meaning of the words used in the statute. *Merriam–Webster's Collegiate Dictionary* (10th ed. 1999) contains the following definitions, in relevant part, at page 250 and page 14, respectively:
>
>> **contiguous** ... **1:** being in actual contact: touching along a boundary or at a point ...
>>
>> **adjacent** ... **1 a:** not distant: nearby ... **b:** having a common endpoint or border ...
>>
>> **sin** adjacent, adjoining, contiguous, juxtaposed mean being in close proximity. *Adjacent may or may not imply contact but always implies absence of anything of the same kind in between* <a house with an *adjacent* garage> .... *Contiguous implies having contact on all or most of one side* <offices in all 48 *contiguous* states>.
>
> (Some emphasis added.) *Webster's Third New International Dictionary* (1993) contains similar definitions at pages 492 and 26, respectively:
>
>> **contiguous** ... **1 a** (1): touching along boundaries often for considerable distances ... **b:** next or adjoining with nothing similar intervening ... **c:** nearby, close: not distant ... **d:** continuous, unbroken, uninterrupted: touching or connected throughout ... **2 a:** immediately preceding or following in time or sequence: without intervening interval or item ... **b:** near in time or sequence **sin** see adjacent
>>
>> **adjacent** ... **1 a:** not distant or far off ...: nearby but not touching ... **b:** relatively near and having nothing of the same kind intervening: having a common border: abutting, touching: living nearby or sitting or standing relatively near or close together ... **c:** immediately preceding or following with nothing of the same kind intervening ...
>>
>> **sin** adjoining, abutting, contiguous, conterminous, coterminous, juxtaposed: adjacent is sometimes merely a synonym for *near* or *close to* ... Applied to things of the same type, it indicates either side-by-side proximity or lack of anything of the same nature intervening ... Contiguous shows variable usage but is likely to suggest touching along a dividing line; it may indicate an unbroken continuity ...
>
> The controversy in this case, although spawning hundreds of pages of legal argument, is simple. The County and the Cottons contend that the legislature would not have used the word "contiguous," meaning "touching," if annexable land only had to be "nearby." The City responds that the legislature would not have used the word "adjacent," meaning "nearby," if annexable land had to be "touching." We will begin our resolution of the matter with the observation that use of these particular two words in this particular context, without defining either word, renders the statute ambiguous, thereby requiring interpretation.
>
> This issue is not unique to Wyoming, inasmuch as many states have the same language in their annexation statutes. *See McQuillin Mum. Corp., supra*, § 7.20; 56 Am.Jur.2d, *supra*, §§ 51–52; and Erwin S. Barber, Annotation, *What Land is Contiguous or Adjacent to Municipality So As To Be Subject to Annexation*, 49 A.L.R.3d 589 (1973). While there is not unanimity in defining these terms, there does seem to be a general rule as to their interpretation:
>
>> In many jurisdictions, territory to be annexed must be contiguous or adjacent to the annexing municipality. As used in this context, the words "contiguous" and "adjacent" are considered to be syn-

onymous. In the absence of statutory definition of these terms, it seems to be agreed that at a minimum the terms require that the boundaries of the annexing municipality and the territory must touch, with some courts indicating that there must be substantial physical contact between the municipality and the territory. It should be noted, however, that many courts have recognized, either expressly or by implication that the meaning of these terms, as used in the annexation statutes, is flexible and may vary from case to case. And, of course, these judicially manufactured definitions are subject to change by annexation statutes which attempt to define the terms "contiguous" and "adjacent."

Barber, *supra*, 49 A.L.R.3d 589, 593–94, § 2[a] (footnotes omitted).

As we will explain further, we conclude that, by limiting annexation to lands that are either contiguous or adjacent, the legislature intended to limit annexation to lands sharing a common boundary with the municipality or touching at some point, with the exception of lands that are separated from the municipality only by those natural or artificial "barriers" listed in Wyo. Stat. Ann. 15–1–402(b). This conclusion is consistent with what appears to be the majority rule, it is consistent with what this Court said in [*In*] *re West Laramie*, 457 P.2d 498, 501 (Wyo.1969) ("under our statute the only requirement with respect to the scope and extent of the area to be annexed is that it must be contiguous to the annexing city or town"), it is consistent with the opinion of the Attorney General of the State of Wyoming, and it is consistent with reason and good sense.[8]

[Footnote 8]: See Wyoming Attorney General Opinion No. 83–021, 117–19 (December 19, 1983) ("where statutory provisions have made no attempt, as in Wyoming, to define the terms 'contiguous' and 'adjacent,' the courts have generally held such terms to require a touching or actual contact between the annexing municipality and the lands to be annexed.... Most courts hold contiguity is more than mere technical touching and requires reasonably substantial physical contact between the territory and the municipality.... This concern for something more than mere physical touching is reflected in the multiple requirements of the Wyoming statute....."). (Emphasis in original.)

In one sense, both sides in this controversy are correct; the legislature would not have needed both terms—"contiguous with" and "adjacent to"—if the terms were meant to be precisely synonymous. Likewise, the legislature would not have used both terms in the alternative if they were meant to define mutually exclusive situations. The most likely intent of the legislature was that the terms were to be given their common meaning; that is, the lands to be annexed must geographically touch the municipality to some extent, with the contiguity requirement being satisfied by the slighter touching contemplated by the word "adjacent." [Footnote omitted.]

If the City's interpretation of the statute—that lands need only be "nearby"—is correct, there would be no reason for the exceptions that are spelled out in Wyo. Stat. Ann. 15–1–402(b). If "nearby" lands that do not touch the municipal boundaries may be annexed, there is no reason specially to permit annexation of lands separated from the municipality by roads, rivers, and the like. In interpreting statutes, we are to read related laws together and we are to give effect to all the words used. *In re Estate of Seeder* [*Seader*], 2003 WY 119, ¶ 23, 76 P.3d 1236, 1243–44 (Wyo.2003) (*quoting Worcester v. State*, 2001 WY 82, ¶ 13, 30 P.3d 47, 52 (Wyo.2001)).

We also note that the common dictionary definitions of both "contiguous" and "adjacent" incorporate the concept of there being nothing similar intervening. For example, buildings are neither contiguous with nor adjacent to one another if there is another building between them. Similarly, land is neither contiguous with nor adjacent to a municipality where the land is separated from the municipal boundaries by anything other than a road, river, or the like.

We interpret statutes in their context; that is, with consideration given to other

statutes *in pari materia* and in the light of their object, purpose and public policy. *Petra Energy, Inc. v. Department of Revenue, State of Wyo.*, 6 P.3d 1267, 1270 (Wyo. 2000); *Wyoming Ins. Guar. Asps' [Association] v. Woods*, 888 P.2d 192, 197 (Wyo. 1994). We ascribe to statutes a reasonable intent. *Attletweedt v. State*, 684 P.2d 812, 814 (Wyo.1984); *In re Romer*, 436 P.2d 956, 958 (Wyo.1968). Application of these principles to Wyoming's annexation statutes leads us to the conclusion that the pervasive tone or tenor of the statutes is strictly to limit the ability of municipalities to annex territory. The statutes prescribe a carefully delineated annexation process, limited by numerous mandated findings.[10] The most reasonable interpretation of the words "contiguous with or adjacent to" in this context is that the legislature intended to limit annexation to lands touching a municipality's boundaries. There is no suggestion in the entire statutory scheme that the legislature intended to vest municipalities with the discretion to determine what land is "adjacent"—meaning "nearby"—on a case-by-case basis. The result of such an interpretation could be "crazy quilt" or "leap frog" annexation that would run counter to the concerns expressed in the statutory mandates.

[Footnote 10]: Wyo. Stat. Ann. 15-1-402(a), for example, in addition to requiring that the land to be annexed be contiguous with or adjacent to the municipality, also requires other specific findings concerning (1) health, safety and welfare; (2) natural, geographical, economical and social development; (3) logical and feasible extension of public services; and (4) due process. Similarly, Wyo. Stat. Ann. 15-1-402(c) requires the municipality to prepare a report concerning proposed boundaries, infrastructure needs and timetables, and fees and tax estimates.

. . . .

... The public policy behind geographically limited municipal annexation was well stated in [*Hawks v. Town of Valdese*, 299 N.C. 1, 261 S.E.2d 90, 97 (1980)] 261 S.E.2d at 97:

Contiguity has always been viewed as synonymous with the "legal as well as the popular idea of a municipal corporation in this country," which is one of "oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality, of compactness or contiguity, not separation or segregation." 56 Am.Jur.2d, Municipal Corporations 69, quoting *City of Denver v. Coulehan*, 20 Colo. 471, 39 P. 425 (1894). Contiguity, then, is an essential component of the traditional concept of a municipal corporation, which is envisioned as a governmental unit capable of providing essential governmental services to residents within compact borders on a scale adequate to insure "the protection of health, safety and welfare in areas being intensively used for residential, commercial, industrial, institutional and government purposes or in areas undergoing such development." G.S. 160A–33(2).

The element of contiguity helps to preserve the economic and political viability of municipal government. The costly package of services provided by municipal government can be economically maintained only within the compact boundaries fostered by the contiguity requirement. Conversely, the requirement of contiguity discourages prohibitively expensive extension of municipal services to noncontiguous areas where municipal services cannot be economically supplied. Moreover, it goes without saying that, from a political standpoint, a compact, contiguous area is more easily governed than one split into diverse, noncontiguous enclaves. Vicinity engenders a unified sense of community identity which facilitates the formation of the consensus essential to effective government.

The function of this Court in reviewing statutes is not, of course, to determine public policy. Rather, our function is to interpret statutes so as to identify reasonable legislative intent. Application of that principle to a review of Wyoming's munici-

pal annexation statutes, where the authority granted to municipalities is strictly limited, leads to the conclusion that the phrase "contiguous with or adjacent to" in Wyo. Stat. Ann. § 15–1–402(a)(iv) was legislatively intended to require that the boundaries of the municipality and the land proposed for annexation must touch to some substantial degree, although there need not necessarily be a lengthy shared border. [Footnote omitted.]

[¶ 26] The Swan Ranch land clearly includes contiguous property that is developable in that it touches the City "to a substantial degree." We are in agreement with the district court that "the degree of contact, the location, and the character of the annexed parcel are sufficient" to satisfy this Court's test. We conclude that the evidence suffices to support the requirement of § 15–1–402(a)(iv), and the district court's conclusions of law were correct.

## CONCLUSION

[¶ 27] We conclude that the district court's decision upholding the Swan Ranch annexation was not clearly erroneous. There is no reason to disturb the decision on the basis of the evidence presented. The district court's decision upholding the validity of the annexation statute under the facts of this case is affirmed.