# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 126

### OCTOBER TERM, A.D. 2016

December 28, 2016

CITY OF TORRINGTON, a Wyoming municipal corporation,

Appellant
(Petitioner),

v.

LEROY P. SMITH, Z & W MILL INC., RUSSELL ZIMMER, TORRINGTON CONSERVATIVE CITIZENS, a Wyoming corporation, and WYOMING PUBLIC SERVICE COMMISSION,

Appellees
(Respondents).

S-16-0107

*Appeal from the District Court of Goshen County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
 James A. Eddington, Jones & Eddington Law Offices, Torrington, Wyoming.

*Representing Appellee Public Service Commission:*
 Peter K. Michael, Wyoming Attorney General; John G. Knepper, Chief Deputy Attorney General; Ryan T. Schelhaas, Division Deputy Attorney General; Karl D. Anderson, Senior Assistant Attorney General; Michael M. Robinson, Senior Assistant Attorney General.  Argument by Mr. Robinson.

*Representing Appellees Leroy P. Smith, Z & W Mill Inc, Russell Zimmer, and Torrington Conservative Citizens:*
 No appearance.

*Before BURKE, C.J., and HILL, DAVIS, and FOX, JJ, and Donnell, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]    The City of Torrington (the City) sought judgment declaring that it has the authority to set rates for electricity it provides to customers outside its corporate limits, and that it has broad discretion to utilize revenues from the provision of electricity for other City expenses.  The district court determined that the Public Service Commission (PSC) has the exclusive jurisdiction to set rates for electricity provided by municipalities to customers outside the municipality's limits and declined to rule on the question of the City's expenditure of electricity revenues, holding that there was no justiciable controversy regarding that issue.  We affirm.

*ISSUES*

[¶2]    1.   Does the Public Service Commission have the exclusive jurisdiction to set rates for electricity provided to customers outside the municipality's limits?

2.   Is there a justiciable controversy regarding the City's use of revenues from the sale of electricity?

*FACTS*

[¶3]    The City owns and operates an electric utility that provides electrical service to approximately 3,500 customers.  Twenty-three percent of those customers are outside the City limits.

[¶4]    The City sued Appellees Leroy P. Smith, Z & W Mill Inc., Russell Zimmer, and Torrington Conservative Citizens (collectively, the Citizens Group), seeking judgment declaring that it was authorized to set rates for electrical services it provided to customers outside the City limits, and that it had discretion to use revenue from the sale of electrical services for other City expenses.  The Citizens Group moved to dismiss the action, arguing that the City had not presented a justiciable controversy.  The district court denied the motion and ordered that the PSC be joined in the action

[¶5]    On cross motions for summary judgment, the City claimed that the laws authorizing municipalities to enact ordinances and enter into contracts to provide electricity outside municipal limits, Wyo. Stat. Ann. §§ 15-7-201, 15-7-203, and 15-7-204(a)(iii) (LexisNexis 2015), grant it the power to set rates for all of its customers, whether in or out of its municipal borders.  The PSC claimed that the power to set rates outside municipal borders is exclusively vested in the PSC pursuant to Wyo. Stat. Ann. §§ 37-1-101(a)(vi)(C) and (H)(II) (LexisNexis 2015).  The district court found that the PSC "has jurisdiction over the rates and aspects of the City's electric utility service provided to customers outside the City's corporate limits . . . ."  The district court also concluded that there was not a justiciable controversy between the City and the Citizens

1

Group and declined to rule on the question of whether the City was properly utilizing revenues from the sale of electricity. The City timely filed this appeal.

## STANDARD OF REVIEW

[¶6]    We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *In re Estate of Meyer*, 2016 WY 6, ¶ 15, 367 P.3d 629, 634 (Wyo. 2016); *Mont. Food, LLC v. Todosijevic*, 2015 WY 26, ¶ 10, 344 P.3d 751, 754-55 (Wyo. 2015). Interpretation of statutory language is a question of law, which we also review de novo. *Best v. Best*, 2015 WY 133, ¶ 8, 357 P.3d 1149, 1151 (Wyo. 2015).

## DISCUSSION

### I.    Does the Public Service Commission have the exclusive jurisdiction to set rates for electricity provided to customers outside the municipality's limits?

[¶7]    The district court concluded that "the PSC has the authority to review and establish just and reasonable rates for all the City's electric utility services provided to customers outside of the City's corporate limits." The City asserts on appeal that the district court erred as a matter of law, and it contends that Wyo. Stat. Ann. §§ 15-7-201 (allowing a city to enter into contracts to provide electricity to customers outside corporate limits), 15-7-203 (ratifying contracts for supply of electricity outside corporate limits), and 15-7-204(a)(iii) (granting a city the power to enact ordinances "providing for the rates to be charged customers of electric current") give the City the authority to set electric utility rates for its customers outside the City's corporate limits. The PSC argues that statutory language granting it "general and exclusive power to regulate and supervise" public utilities in Wyoming, Wyo. Stat. Ann. § 37-2-112 (LexisNexis 2015), and excluding only services provided within city limits from that grant, Wyo. Stat. Ann. § 37-1-101(a)(vi)(H)(II), vest it with the exclusive jurisdiction to set those rates.

> In interpreting statutes, this Court must endeavor to find the reasonable intent of the drafters. We begin by examining the ordinary and obvious meaning of the words employed according to their arrangement and connection. When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and need not invoke our longstanding rules of statutory construction.

*Best*, 2015 WY 133, ¶ 8, 357 P.3d at 1151-52 (citations omitted). "All statutes must be construed in pari materia; and in ascertaining the meaning of a given law, all statutes relating to the same subject or hav[ing] the same general purpose must be considered and

2

construed in harmony." *Thunderbasin Land, Livestock & Inv. Co. v. Cty. of Laramie Cty.*, 5 P.3d 774, 779 (Wyo. 2000); *see also In re Estate of Meyer*, 2016 WY 6, ¶ 21, 367 P.3d at 636; *Wyo. Cmty. Coll. Comm'n*, 2001 WY 86, ¶ 16, 31 P.3d 1242, 1249 (Wyo. 2001). "Moreover, we strive to avoid an interpretation that produces an absurd result, or that renders a portion of the statute meaningless." *Seherr-Thoss v. Teton Cty. Bd. of Cty. Comm'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) (citations omitted); *see also Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 42, 320 P.3d 222, 234 (Wyo. 2014).

[¶8] Wyo. Stat Ann. § 37-2-112 grants the PSC the "general and exclusive power to regulate and supervise every public utility within the state . . . ." The parties do not dispute that the City is a "public utility" because it "owns, operates, leases, controls . . . [any] plant, property or facility for the generation, transmission, distribution, sale or furnishing to or for the public of electricity for light, heat or power . . . ." Wyo. Stat. Ann. § 37-1-101(a)(vi)(C).

[¶9] In reviewing PSC rate-setting decisions, we have explained that "PSC is required to give paramount consideration to the public interest in exercising its statutory powers to regulate and supervise public utilities. The desires of the utility are secondary." *PacifiCorp v. Pub. Serv. Comm'n of Wyo.*, 2004 WY 164, ¶ 13, 103 P.3d 862, 867-68 (Wyo. 2004) (citations omitted). Rates shall be "just and reasonable," Wyo. Stat. Ann. § 37-3-101 (LexisNexis 2015), and the PSC is empowered to determine whether rates meet this requirement. *See* Wyo. Stat. Ann. § 37-2-121 (LexisNexis 2015). The rationale underlying this grant of power to the PSC, and utility regulation in general, is known as the "regulatory compact."

> In general, the compact is a theoretical agreement between the utilities and the state in which, as a quid pro quo for being granted a monopoly in a geographical area for the provision of a particular good or service, the utility is subject to regulation by the state to ensure that it is prudently investing its revenues in order to provide the best and most efficient service possible to the consumer. In exchange, the utility is allowed to earn a fair rate of return on its rate base.

*PacifiCorp*, 2004 WY 164, ¶ 28, 103 P.3d at 871 (citations omitted); *see also* 64 Am. Jur. 2d Public Utilities § 16 (2011).

[¶10] The Wyoming legislature carved out a limited exception to the PSC's "general and exclusive power to regulate and supervise" utilities for "public utilities owned and operated by a municipality of the state of Wyoming, ***except as to that portion of a municipality owned and operated public utility, if any, as may extend services outside the corporate limits of a municipality*** . . . ." Wyo. Stat. Ann. § 37-1-101(a)(vi)(H)(II)

3

(emphasis added).  The legislature's intent is clear.  The PSC has general and exclusive power to regulate utility services, except to the limited extent that a municipality provides such services to customers within its corporate limits.  The City argues that "if the parties agree to rates in a contract, there is no need for the PSC to review, approve, regulate or supervise [the City] and its customers."  This may be true with respect to those customers who reside within the City limits, and who have the opportunity to influence municipal decisions, such as setting rates for utility services, when they cast their ballot.  However, customers outside the City limits have no means to influence municipal decisions because they have no vote in municipal elections.  As the PSC points out, "[w]ithout regulatory oversight from the [PSC], municipalities could subsidize their residents' rates through increased rates on non-residents' services."

[¶11]  "The purpose of the authority of the PSC is to secure to the public all the advantages of competition in obtaining fair rates and good service and to protect the public from its disadvantages."  *In re Rule Radiophone Serv., Inc.*, 621 P.2d 241, 246 (Wyo. 1980).  The PSC serves that purpose for the customers outside the City, while the voters take on that function for those services provided within the City limits.  Our reading of the statutes is consistent with our language in *Tri-County Electric Association, Inc. v. City of Gillette*, 584 P.2d 995, 1003 (Wyo. 1978), where we stated:

> At no time in the statutory history of municipal ownership and operation of an electric utility has a Wyoming city or town had authority to grant or deny the right to any utility to serve areas outside its corporate limits.  That jurisdiction has been and still is solely vested in the P.S.C.

[¶12]  The City argues that several provisions in Title 15, granting powers to cities and towns, trump the regulatory scheme governing utilities.  The City first relies upon Wyo. Stat. Ann. § 15-7-201, which provides that a city "may . . . supply electric current to persons . . . outside the corporate limits and enter into the necessary contracts upon the terms and under any rules and regulations as agreed upon by the parties."  The City claims that section 201 permits it to provide electrical service to customers outside the corporate limits pursuant to contract and that the terms it refers to include the amount it will charge for the electricity provided.  We agree that the plain language of § 15-7-201 grants the City the authority to provide services to customers and to enter into contracts regarding that service.  But the statute is silent as to the City's authority to set rates.

[¶13]  *Coffinberry v. Town of Thermopolis*, 2008 WY 43, 183 P.3d 1136 (Wyo. 2008), upon which the City relies, does not provide support for the City's position that power to set the rate it charges non-residents is implied by the grant of authority in § 15-7-201.  The issue there was whether a municipality had statutory authority to hold a property owner liable for water, sewer, and sanitation service fees that were unpaid by his tenants.  *Id*. at ¶ 2, 183 P.3d at 1137.  The property owner had argued that the town could not

4

charge him unpaid utility fees because the relevant statutes did not specifically provide cities with the authority to charge "property owners" with service fees; instead, they used words such as "user," "consumer," and "inhabitant." *Id*. at ¶ 9, 183 P.3d at 1139. In rejecting the property owner's argument, we recognized that "the powers of a municipality are not necessarily limited to those expressly conferred but that a municipality may also exercise powers fairly and necessarily implied from the grant contained in the statute or constitutional provision." *Id*. at ¶ 7, 183 P.3d at 1139 (emphasis omitted) (citing *Coulter v. City of Rawlins*, 662 P.2d 888, 894-95 (Wyo. 1983)).

[¶14]   The City asks us to conclude, as we did in *Coffinberry*, that "the long-recognized principle that statutory authority granted to cities and towns carries with it necessarily implied powers to carry out the purposes of the grant[,]" 2008 WY 43, ¶ 10, 183 P.3d at 1139-40, in this case, the power to set rates for electricity. The distinction between *Coffinberry* and the case at bar is that here there is a statute that unambiguously confers to the PSC the power to set rates for electricity used by customers outside a municipality. In *Coffinberry*, there was no analogous statute. We decline the City's invitation to find an implicit power in § 15-7-201 when elsewhere the Wyoming statutes unambiguously grant the power to the PSC. *See, e.g.*, *Lance Oil & Gas Co. v. Wyo. Dep't of Revenue*, 2004 WY 156, ¶ 14, 101 P.3d 899, 903-04 (Wyo. 2004) (even assuming statute is ambiguous, result would be reached in light of other statutes relating to the same subject). Applying our rules of statutory construction to give effect to § 15-7-201, as well as to the statutes granting the PSC authority to regulate utilities, we hold that the City's authority to enter into contracts regarding its supply of electricity outside the City limits does not override the PSC's authority to set the rates for that service.

[¶15]   The argument that Wyo. Stat. Ann. § 15-7-204(a)(iii) specifically grants the City the power to set rates for its electricity customers also fails. That statute authorizes municipalities to "[e]nact ordinances . . . and establish rules and regulations . . . providing for the rates to be charged consumers of electric current either for lights, power or other purposes and for their collection." *Id*. Again, we must read this provision in harmony with other provisions and, if possible, interpret statutes so as not to render any language meaningless. *Seherr-Thoss*, 2014 WY 82, ¶ 19, 329 P.3d at 945 ("[W]e strive to avoid an interpretation that produces an absurd result, or that renders a portion of the statute meaningless."). The authority to "enact ordinances" that "provid[e] for the rates" does not explicitly grant power to the City to establish those rates. That power is granted to the City for customers within the City limits by Wyo. Stat. Ann. § 37-1-101(a)(vi)(H)(II), which excludes municipalities from the PSC's jurisdiction; but that power is reserved to the PSC for customers outside the City limits. *Id.*; *see supra* ¶ 10. Any other reading of these two statutes would render Wyo. Stat. Ann. § 37-1-101(a)(vi)(H)(II) meaningless.[1]

---

[1] Although not raised by the parties, we note that Wyo. Const. art. 13, §1(b) provides:

5

[¶16] The City next claims that Wyo. Stat. Ann. § 15-7-203 prohibits Title 37 from interfering with the City's "specific statutory authority to contract and set rates for customers outside of its corporate limits." (Emphasis in original.) The statute provides:

**Existing contracts ratified.**

Any contracts entered into by any city or town for supplying electric current outside its corporate limits are ratified and confirmed as valid and binding contracts, any other act or law to the contrary notwithstanding.

Wyo. Stat. Ann. § 15-7-203. The City claims that it derives the "specific statutory authority to . . . set rates" from § 15-7-204(a)(iii). As we concluded above, that statute does not grant the City authority to set rates outside the municipal limits. *See supra* ¶ 15. Reading the statutes *in pari materia*, we conclude that the legislature granted the City the authority to provide electricity to customers outside the City limits via Wyo. Stat. Ann. § 15-7-201, but reserved the authority to determine an appropriate rate for the service provided outside the City limits to the PSC in Wyo. Stat Ann. §§ 37-2-112, 37-1-101(a)(vi)(C) and (a)(vi)(H)(II). The language of Wyo. Stat. Ann. § 37-1-101(a)(vi)(H)(II) unambiguously grants the PSC exclusive regulatory power over all municipally-owned public utility services provided to customers outside the municipality's corporate limits.

[¶17] Wyo. Stat. Ann. §§ 15-7-201, 15-7-203, and 15-7-204, do not grant the City power to establish rates for those services. The district court did not err as a matter of law when it concluded that only the PSC has the authority to establish rates for municipal electricity customers located outside the City.

## II. Is there a justiciable controversy regarding the City's use of revenues from the sale of electricity?

[¶18] The City sought a declaration that Wyoming statutes authorize the City to transfer funds from its electrical department to other departments. The Citizens Group responded, alleging that there was no justiciable controversy between the parties, and the district court agreed.

---

All cities and towns are hereby empowered to determine their local affairs and government as established by ordinance passed by the governing body, subject to referendum when prescribed by the legislature, and further subject only to statutes uniformly applicable to all cities and towns . . . .

Title 37 establishes uniformly applicable utility regulation laws that are applicable to cities and towns, and thus the City's authority to enact ordinances providing for rates is "subject to" those statutes.

[¶19]  On appeal, the City argues that there is a justiciable controversy because, in the past, members of the Citizens Group have asked the county attorney to enforce the statutes in question and because the statutes directly affect the operation of the City.  The Citizens Group did not respond.

[¶20]  The purpose of the Uniform Declaratory Judgments Act "is to settle and to afford relief from uncertainty and insecurity with respect to legal relations, and [it] is to be liberally construed and administered." Wyo. Stat. Ann. § 1-37-114 (LexisNexis 2015).[2] However, the Act does not create jurisdiction where it does not otherwise exist.  *Best*, 2015 WY 133, ¶ 19, 357 P.3d at 1153-54; *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 11, 206 P.3d 722, 726 (Wyo. 2009).  The elements to establish a justiciable controversy under the Uniform Declaratory Judgments Act are:

> 1.  The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2.  The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3.  It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4.  The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

---

[2] The Uniform Declaratory Judgments Act, Wyo. Stat. Ann. §§ 1-37-101 through 1-37-115 (LexisNexis 2015) provides that:

> Any person . . . whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo. Stat. Ann. § 1-37-103.

*Maxfield v. State*, 2013 WY 14, ¶ 14, 294 P.3d 895, 899 (Wyo. 2013) (citing *Carnahan v. Lewis*, 2012 WY 45, ¶ 17, 273 P.3d 1065, 1071 (Wyo. 2012); *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974)). "The difference between an abstract question [that is nonjusticiable] and a controversy contemplated by the Uniform Declaratory Judgments Act is one of degree . . . ." *Cranston v. Thomson*, 530 P.2d 726, 729 (Wyo. 1975). "Basically, the problem in each case is whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the declaratory judgment." *William F. West Ranch*, 2009 WY 62, ¶ 30, 206 P.3d at 733 (citing *Cranston*, 530 P.2d at 729; *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 959-960, 22 L.Ed.2d 113 (1969)).

[¶21] In *William F. West Ranch*, the plaintiffs sought declaratory judgment, claiming that the State was not regulating the production of water associated with coal bed methane extraction in compliance with Wyoming's constitution or statutes, resulting in damage to their property. 2009 WY 62, ¶ 6, 206 P.3d at 725. This Court determined that the plaintiffs had sufficiently alleged that they had an interest which had been harmed, satisfying the first element of the *Brimmer* test: their property was affected by coal bed methane water. *Id.* at ¶ 25, 206 P.3d at 731. However, the facts did not satisfy the second element of the *Brimmer* test in that the plaintiffs did not show that the relief sought would remedy the situation. *Id.* at ¶ 26, 206 P.3d at 731-32. We concluded that because the relief sought by the plaintiffs was theoretical and would not have an immediate and real effect on them, they had not presented a justiciable controversy. *Id.* at ¶ 30, 206 P.3d at 733.

[¶22] The City contends that its situation is similar to the situation in *BJ Hough, LLC v. City of Cheyenne*, 2012 WY 140, 287 P.3d 761 (Wyo. 2012). In *Hough*, the City of Cheyenne adopted an ordinance annexing certain property. *Id*. at ¶ 3, 287 P.3d at 763. Owners of properties surrounding the annexed parcel challenged the validity of that ordinance, seeking a declaratory judgment. *Id*. at ¶ 4, 287 P.3d at 764. Without applying the *Brimmer* factors, we determined that, while the landowners had no standing under the annexation statutes which granted owners of the annexed territory a right of appeal to the district court, *id*. at ¶ 11, 287 P.3d at 765, the adjacent landowners did have standing under the Uniform Declaratory Judgments Act to challenge the validity of the ordinance annexing the land at issue. *Id*. at ¶ 13, 287 P.3d at 766. We held that "the Declaratory Judgment[s] Act is specifically designed to bring an action challenging the constitutionality or validity of local laws or ordinances." *Id*. at ¶ 12, 287 P.3d at 765 (citations omitted).

[¶23] Our examination of the allegations contained in the City's petition reveals that the City's situation is not analogous to the situations in *Hough* or even *William F. West Ranch*. In those cases, the citizens brought declaratory judgment actions to challenge the government's specific conduct. The Declaratory Judgments Act does not grant the

authority for the government to challenge citizens' readings of the law just because a citizen may take issue with the government's interpretation of that law in a public meeting or elsewhere.

[¶24] The first *Brimmer* requirement requires that the "parties hav[e] existing and genuine, as distinguished from theoretical, rights or interests." *Brimmer*, 521 P.2d at 578. While the City may desire court ratification of its method of allocating proceeds from its sale of electricity, the City has not alleged a tangible interest that has been harmed; nor has the City established that the Citizens Group has anything other than a "theoretical" interest. If the City's assertion that the Citizens Group has "taken positions contrary to [the City] regarding the statutes at issue" qualified as an "existing and genuine" interest, there would be no end to declaratory judgment actions by governmental entities.

[¶25] *Brimmer's* second prong requires that the "controversy must be one upon which the judgment of the court may effectively operate." *Id.*, 521 P.2d at 578. We have explained that "[t]he first two elements of the *Brimmer* test are inextricably linked: if a plaintiff fails to allege that an interest has been harmed, a judicial decision cannot remedy a nonexistent harm." *Vill. Rd. Coalition v. Teton Cty. Hous. Auth.*, 2013 WY 38, ¶ 16, 298 P.3d 163, 169 (Wyo. 2013). Because the City has alleged no harm, the courts could fashion no remedy. There is no controversy the judicial determination of which would have the effect of a final judgment; and these proceedings are "a mere disputation," thus, the third and fourth *Brimmer* prongs are also not satisfied. We agree with the district court's conclusion that the City has failed to assert a justiciable controversy, and any decision on the City's spending of electrical revenues would be advisory.

## *CONCLUSION*

[¶26] Wyoming Statutes §§ 37-1-101(a)(vi)(C) and (H)(II) clearly and unambiguously grant the PSC the exclusive power to set rates for electricity provided to customers outside the City corporate limits. The City has not established that there is a justiciable controversy between the City and the Citizens Group, as required pursuant to the Uniform Declaratory Judgments Act, and therefore the district court correctly declined to rule on the question of whether the City was properly utilizing funds it obtained from the sale of electricity. Affirmed.