**Clarence A. BRIMMER, as Attorney General of Wyoming, Appellant (Plaintiff below),**

v.

**Thyra THOMSON, as Secretary of State, et al., Appellees (Defendants below).**

No. 4385.

Supreme Court of Wyoming.

April 25, 1974.

Clarence A. Brimmer, Atty. Gen., Sterling A. Case, Deputy Atty. Gen., William M. Sutton, Special Asst. Atty. Gen., Cheyenne, for appellant.

Ellen Crowley, Cheyenne, Rex O. Arney and Tom C. Toner, of Redle, Yonkee & Arney, Sheridan, Robert R. Rose, Jr., Casper, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE and McCLINTOCK, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is a case which seeks a determination of the question whether an incumbent State Senator whose term does not expire until the first Monday in January 1977 is prohibited or ineligible to seek and hold the office of Governor by virtue of § 8, Art. 3, of the Wyoming Constitution.

On March 13, 1974, the office of the Attorney General issued an official and published opinion over the signature of Sterling A. Case, Deputy Attorney General, which opinion denies or places in serious question the right of a State Senator who is serving a full term to become a candidate for another elective office during the period of his term.[1] Thereafter Clarence A. Brimmer, as Attorney General of Wyoming, filed his complaint seeking a declaratory judgment and that the court declare the named defendants Wallop, Jones, and Leimback, alleging they proposed to run for the office of Governor, were eligible to become candidates, although their terms will not expire until the first Monday in January 1977. In response thereto defendants Leimback, Wallop, and Jones filed answers seeking the same relief and motions for summary judgment.

Defendant Leimback affirmatively alleges this opinion casts doubt upon his qualifications to run for Governor and the duty of the Secretary of State as chief election officer to follow the Attorney General's opinion and to act thereon, and suggests the probability that he would not be permitted to make available his candidacy in face of this opinion or if nominated and elected would not be allowed to take his oath.

Wallop, in addition, filed a counterclaim, alleging it was his intention to file for the office of Governor in the Republican primary, alleging further there is a dispute between himself and the Attorney General as to his eligibility to be a candidate for such office.

Plaintiff and counter-defendant admitted the material parts of Wallop's counterclaim and the issuance of the opinion by Case.

Thyra Thomson, as Secretary of State, filed a motion to dismiss and answer in which motion to dismiss she alleged she was willing and able to comply with any judgment herein, and in her answer admitted the execution of the opinion above referred to and that by virtue of § 9–125, W.S.1957, the Attorney General was the legal advisor in her official duties and that an uncertain condition had been created by virtue of this opinion.

The trial court held that Thyra Thomson, as Secretary of State, was not a proper party to the suit and that a justiciable controversy was before the court and certified certain constitutional questions, which will be hereinafter set out, to this court for disposal.

Before disposition can be made or consideration given to the question of the defendants' eligibility to run for State office we must consider the question of whether a justiciable issue or contorversy is framed by this action and careful examination must be made of this record because of our recognition of the rule that a justiciable controversy must exist before a court can proceed to grant relief under our statute, Anderson v. Wyoming Development Co., 60 Wyo. 417, 154 P.2d 318, 336; Holly Sugar Corporation v. Fritzler, 42 Wyo. 446, 296 P. 206. It may be observed from the posture of this case that the plaintiff, as Attorney General, cannot escape the consequences or effect of an official pub-

---

1. This opinion answers the query of whether a State Senator may become a candidate for State office in the middle of his term with a "qualified 'no'."

lished legal opinion from his office by the Deputy Attorney General without its withdrawal or reversal nor the consequences of his pleading in his answer to Wallop's counterclaim. Although the prayer of said complaint seeks a declaration in favor of these defendants who desire to be candidates, the matter of the controversy and adversity is presented by the attachment of Exhibit A, a copy of the opinion, to said complaint and his pleading admission directed at Wallop's counterclaim. These defendants, particularly Wallop, cannot be deprived of their right to assert a controversy by such equivocal position. It is conceded that all of the defendants have the proper qualifications for such office unless they be ineligible by virtue of the constitutional provision.

In consideration of the question whether this is a proper matter for resolution under the Uniform Declaratory Judgments Act, §§ 1–1049—1–1064, W.S.1957, 1973 Cum. Supp., it may be observed this is a proper vehicle to determine rights or status (§ 1–1051), that its application is discretionary (§ 1–1056), that it is remedial, and that it is to be liberally construed and administered (§ 1–1062).

> "* * * Begrudging availability of the declaratory vehicle is inconsistent with the Act's expressed remedial tenor directed to the elimination of uncertainty and insecurity and the settlement of controversy. * * *" Planned Parenthood Center of Tucson, Inc. v. Marks, 17 Ariz.App. 308, 497 P.2d 534, 538.

It is apparent from what has been said that a controversy does exist. Our only concern, and the question to which careful consideration must be given is, Is there such dispute which could serve as the basis of a justiciable issue?

A dispute may be a "friendly" one where parties may have agreed to submit a question to courts for determination and this is in and of itself no valid objection to the rendition of a declaratory judgment, International Longshoremen's Association, AFL–CIO, v. Seatrain Lines, Inc., 2 Cir.,

326 F.2d 916, 918–919, if the basic elements necessary as the basis of a declaratory judgment action are present and if the same is sustainable of judicial determination and adjudication of a present right.

The case of State ex rel. Miller v. State Board of Education, 56 Idaho 210, 52 P.2d 141, 143, is illustrative of a situation wherein both parties took the same position in urging the validity of a statute and the correctness of the trial court's judgment. Relief was granted therein. No one raised this question in that matter and both parties sought a review. The court in that connection said:

> "* * * Notwithstanding the fact that no one raises the question of procedure here, and both parties are seeking a review of the case in this court, we feel constrained to announce, as a warning to future litigants, that the assumption of jurisdiction in this case shall not be taken as a precedent for future cases. It is only what seems to be the public importance of the matters involved and the exigencies of the situation that have induced us to consider this appeal."

In the case of Whelan v. New Jersey Power & Light Company, 45 N.J. 237, 212 A.2d 136, 139, which was an action for declaratory judgment as to the validity of a contract between the city and the light company, the lower court having held the contract invalid, both parties contended on appeal that the contract should be upheld and alleged only that the mayor was troubled by doubts raised by the bond counsel and that purchasers of the bonds would require the opinion of such counsel, who was unwilling to risk the issuance of one. To establish an adverse position a member of the firm of the bond counsel purchased $5000 worth of these bonds and used that interest as a basis for his intervention. This was criticized by the court but the court did assume such jurisdiction, being satisfied that relief should have been granted, and despite the fact that the principal parties believed the contract valid still held that the controversy was real and

not hypothetical because of the bond counsel's doubt.

A rather clear statement of the necessary elements of a justiciable controversy under the Uniform Declaratory Judgments Act appears in the case of Sorenson v. City of Bellingham, 80 Wash.2d 547, 496 P.2d 512, 517, wherein it is said:

"* * * First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, *or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them.* Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution." (Emphasis supplied.)

■ In declaratory judgment actions there is a well recognized exception that the rule requiring the existence of justiciable controversies is not followed or is relaxed in matters of great public interest or importance, Diversified Industries Development Corporation v. Ripley, 82 Wash.2d 811, 514 P.2d 137, 139, and cases cited under footnote 2. This exception is also recognized in 1 Anderson, Actions for Declaratory Judgments, § 63, p. 126 (2d Ed.).[2]

■ The question of great public importance rests with this court, Kellner v. District Court In and For City and County of Denver, 127 Colo. 320, 256 P.2d 887, 888. This exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance. However, this case demonstrably involves such a matter, concerning as it does the election process for the entire State of Wyoming, and because the position asserted in the Attorney General's opinion abrogates and interferes with the free and untrammeled choice of every elector in the State of Wyoming. The right to vote is a fundamental right entitled to the strict protection of the courts, Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647; Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583; Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169. Although taken out of context, the following statement from Kramer, supra, is illustrative of the recognized importance of this right:

"* * * Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government."

The defendants certainly have a genuine and existing right, i. e., to seek election for a public office for which they have proper qualifications. This is a valuable and fundamental right.[3] To wrongfully prevent the candidacy of qualified persons or place *improper restriction thereon might well* eliminate the effective participation of the

---

2. This court has recognized the rule that even though an appeal may have become moot, if it is of sufficient public importance it will be decided, Eastwood v. Wyoming Highway Department, 76 Wyo. 247, 301 P.2d 818, 819.

3. Carter v. Commisson on Qualifications of Judicial Appointments, 14 Cal.2d 179, 93 P.2d 140, 142; Cowan v. City of Aspen, Colo., 509 P.2d 1269, 1272.

electors in elections, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 10, 21 L.Ed.2d 24. There can be no question that the judgment of the court in this matter would effectually operate to preserve this right to each of these defendants and would have the force of a final decree upon the rights and status of these defendants; and it is certainly a matter of "great overriding public moment." The adversary nature of these proceedings is evidenced after we pierce all of the pleadings, statements, and briefs herein and this adversity clearly rests in the official and reported opinion of the Attorney General's office. In the absence of the withdrawal or reversal of this opinion, which rests as a bar to the aspirations of these defendants, there is a definite condition of adversity.

■ It is axiomatic that the Declaratory Judgments Act cannot be relied upon to secure an advisory opinion. It is therefore useful to examine the definition of an advisory opinion and to determine if disposal of this matter could be considered such an advisory opinion. A declaratory judgment is a binding adjudication of the rights and status of the litigants even though no consequential relief is awarded. An advisory opinion is one which adjudicates nothing and binds no one, Cincinnati Metropolitan Housing Authority v. Cincinnati District Council No. 51, American Federation of State, County and Municipal Employees, AFL–CIO, 22 Ohio App.2d 39, 51 Ohio 2d 45, 257 N.E.2d 410, 414; Reuter v. Cordes-Hendreks Coiffures, Inc., Tex.Civ.App., 422 S.W.2d 193, 196. This determination will be binding upon the Attorney General, forcing the withdrawal of this opinion or that it be disregarded. The Secretary of State, as chief election officer, has stated her intention to be bound; and particularly the status of these defendants is adjudicated and their eligibility to seek this office finally determined, and this would be a final judgment insofar as they

are concerned (§ 1–1051, W.S.1957). We therefore hold this court has jurisdiction of this matter.

■ The trial court certified the following questions:

"(a) Does Section 8 of Article 3, of the Constitution of the [State of] Wyoming providing that, 'No senator or representative shall, during the term for which he was elected, be appointed to any civil office under the state * * *', prohibit the Defendants, Malcolm Wallop, Dick Jones and Harry E. Leimback, as State Senators whose terms of office will not expire until the first Monday in January of 1977, from becoming candidates for the office of Governor of the State of Wyoming?

"(b) Does the word 'appointed' as used in Section 8 of Article 3, of the Constitution of the State of Wyoming, reading 'No senator or representative shall, during the term for which he was elected, be appointed to any civil office under the state * * *' include election to a civil office by a popular vote of the people?"

There is little direct applicable authority or precedent upon these questions, which may be explained by the fact that only five states have similar or comparable provisions in their State constitutions.[4] In our research and from the briefs of the parties the only case coming to our attention which may be considered direct or persuasive authority is that of Carpenter v. People, 8 Colo. 116, 5 P. 828 (1885), which was a case involving the election of a member of the State Senate to a position of City Attorney of the City of Denver. After mention of other authorities and some discussion that court, 5 P. at 836, said:

"* * * These authorities are in point, and we have no reason to doubt their soundness. We prefer, however, to rest

---

4. Colorado, Montana, New Mexico, Pennsylvania, and Wyoming. See Index, Digest of State Constitutions, Legislative Drafting Research Fund, Columbia University, p. 663 (2d Ed.). An examination reveals considerable disparity in the New Mexico provision.

the decision of the point upon the plain words of the constitution. It only prohibits a senator from being *appointed* to a civil office, and not his *election* thereto.

"A careful examination of all the various provisions of the constitution, pertaining to offices of various kinds and grades, convinces us that the framers of that instrument did not employ the words 'elect' and 'appoint' as synonymous, but with due regard to the primary and proper significance of both words. Any one who will take the time to make a careful examination of the constitution, will appreciate the force of this proposition, by observing the accuracy of selection displayed in their use. The relator not having been *appointed* to the office of city attorney, it is not important whether it be *a civil office* under the state or not." (Emphasis in original.) [5]

In the absence of other direct authority this writer may be constrained to observe that in other states wherein like questions may have been suggested the apparent and obvious distinction between "appointment" and "election" may have avoided controversy. The answer may have rested in the pursuit of clarity rather than the search for confusion.

■ Absent this cited authority, however, there is an equally compelling ground why the certified questions must be answered in the negative—that is the basic and universally accepted rule that statutory and constitutional provisions which tend to limit the candidacy of any person for public office or exclude any citizen from participation in the elective process must be construed in favor of the right of the voters to exercise their choice and should be construed strictly and not extended to cases not clearly covered thereby. This rule was recognized in the cases of Rasmussen v. Baker, 7 Wyo. 117, 50 P. 819, 821, 38 L.R.A. 773, and State ex rel. Pape v. Hockett, 61 Wyo. 145, 156 P.2d 299, 303. The same rules of construction are applicable to constitutional provisions as to statutes, Rasmussen v. Baker, supra, 50 P. at 822, and this is clearly recognized in other jurisdictions, Ervin v. Collins, Fla., 85 So. 2d 852, 855, 59 A.L.R.2d 706; McGinnis v. Cossar, 230 Ky. 213, 18 S.W.2d 988, 989; 67 C.J.S. Officers § 11, p. 126.

It must be presumed that the writers of our constitution were literate and intelligent men, and knew the plain meaning of the words "appoint" and "elect," and examination of other sections of our constitution demonstrates that understanding and distinction. No good purpose can be served by investigation or discussion of the proceedings of the constitutional convention, nor would it be a proper exercise because the intention of the parties must be presumed to have been expressed when there is no ambiguity. A court cannot depart from this, Rasmussen v. Baker, supra, 50 P. at 821. Our decisions are clear that in the construction of statutes this court has embraced this principle and these decisions are numerous, State ex rel. Kosakewich v. Dame, 70 Wyo. 343, 249 P.2d 156, 157, and cases cited. There is certainly no ambiguity demonstrated in this section.

Therefore, the certified questions are answered in the negative.

---

5. Although we do not deem it of persuasive precedental weight, the only other direct authority found in point is an opinion of the Attorney General of the State of Pennsylvania appearing in 28 Pa.County Ct. 369, 370, 12 Pa.Dist. 587 (1903), wherein appear the following words construing an identical provision:

"* * * The word 'appoint,' in the sense in which it is used in the Constitution, has a well-settled technical meaning. It depends upon the exercise of the power or right to appoint, as in the case of the president or the governor, and the power can only be properly exercised in relation to an office in the technical sense, which is under the law to be filled by an appointment instead of by an election."