# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 14

### OCTOBER TERM, A.D. 2012

### February 1, 2013

MAX MAXFIELD, in his individual capacity,

Appellant
(Plaintiff),

v.

STATE OF WYOMING,

Appellee
(Defendant).

S-12-0084

*Certified Questions*
*From the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
    Bradley T. Cave, P.C., Holland & Hart LLP, Cheyenne, Wyoming.

*Representing Appellee:*
    Gregory A. Phillips, Wyoming Attorney General.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KITE, Chief Justice.**

[¶1] Max Maxfield, the Secretary of State for the State of Wyoming, filed a declaratory judgment action in district court challenging the constitutionality of Wyoming's term limit statute. The State responded, asserting among other claims, that Mr. Maxfield's complaint does not present a justiciable controversy and, in any event, the statute is constitutional. We accepted certification of the issues from the district court and hold that Mr. Maxfield has presented a justiciable controversy and the statute is unconstitutional.

## CERTIFIED QUESTIONS

[¶2] The district court certified the following questions to this Court:

1. To proceed under the Wyoming Declaratory Judgment Act, Wyo. Stat. Ann. §§ 1-37-101 through 1-37-115, Mr. Maxfield must present a justiciable controversy. To do so, he must show existing and genuine rights or interests, not theoretical ones. Does this case present a justiciable controversy?

2. Is the term limit law for statewide elected officials (Wyo. Stat. Ann. § 22-5-103(a)(i)), constitutional and enforceable, or are the qualifications provided by the Wyoming Constitution exclusive?

## FACTS

[¶3] Article 4, § 11 of the Wyoming Constitution states:

**§ 11. State officers; election; qualifications; terms.**

There shall be chosen by the qualified electors of the state at the times and places of choosing members of the legislature, a secretary of state, auditor, treasurer, and superintendent of public instruction, who shall have attained the age of twenty-five (25) years respectively, shall be citizens of the United States, and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government, for the term of four (4) years and

1

until their successors are elected and duly qualified. The legislature may provide for such other state officers as are deemed necessary.

[¶4]  Article 6 contains the following provisions pertaining to electors:

**§ 2.  Qualifications of electors.**
Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein provided.

. . . .

**§ 5.  Electors must be citizens of United States.**

No person shall be deemed a qualified elector of this state, unless such person be a citizen of the United States.

. . . .

**§ 15.  Qualifications for office.**
No person except a qualified elector shall be elected . . . to any civil . . . office in the state.

[¶5]  In the general election in 1992, the voters approved Initiative Number 1, § 1 which limited the number of terms that could be served in public office by certain elected officials.  As amended by the legislature, the initiative provided in relevant part as follows:

**§ 22-5-103.   Legislative service; limits on ballot access; state offices**

(a)  Notwithstanding any other provision of Wyoming law, the secretary of state or other authorized official shall not certify the name of any person as the nominee or candidate for the office sought, nor shall that person be elected nor serve in that office if the following will occur:

2

(i) The person, by the end of the current term of office will have served, or but for resignation, would have served eight (8) or more years in any sixteen (16) year period in the office for which the candidate is seeking nomination or election, except, that any time served in that particular office prior to January 1, 1993, shall not be counted for purposes of this term limit. This provision shall apply to the offices of governor, secretary of state, state auditor, state treasurer, and state superintendent of public instruction;

(ii) The person, by the end of the current term of office will have served, or but for resignation, would have served twelve (12) or more years in any twenty-four (24) year period as a state representative, except that any time served in the office of state representative prior to January 1, 1993, shall not count for purposes of this term limit;

(iii) The person, by the end of the current term of office will have served, or but for resignation, would have served twelve (12) or more years in any twenty-four (24) year period as a state senator, except that any time served as a state senator prior to January 1, 1993, shall not be counted for purposes of this term limit.

[¶6]  In *Cathcart v. Meyers*, 2004 WY 49, 88 P.3d 1050 (Wyo. 2004), this Court found subsections (ii) and (iii) to be unconstitutional.  Accordingly, in 2005 the legislature repealed those subsections and the provision now reads:

**§ 22-5-103.  Limits on ballot access; state offices.**

(a) Notwithstanding any other provision of Wyoming law, the secretary of state or other authorized official shall not certify the name of any person as the nominee or candidate for the office sought, nor shall that person be elected nor serve in that office if the following will occur:

(i) The person, by the end of the current term of office will have served, or but for resignation, would have served eight (8) or more years in any sixteen (16)

3

year period in the office for which the candidate is seeking nomination or election, except, that any time served in that particular office prior to January 1, 1993, shall not be counted for purposes of this term limit. This provision shall apply to the offices of governor, secretary of state, state auditor, state treasurer, and state superintendent of public instruction.

[¶7]  Mr. Maxfield was first elected Secretary of State in 2006 and began serving his term in 2007.  He was elected to serve a second term in 2010, and began serving that term in 2011.  His current term ends in January 2015.

[¶8]  In September of 2011, Mr. Maxfield filed a complaint for declaratory and injunctive relief in district court seeking to have Wyo. Stat. Ann. § 22-5-103(a) (LexisNexis 2011) declared unconstitutional.  He asserted that the statute prohibits him from running for another term even though he meets all the constitutional qualifications for holding the  office of secretary of state.   He argued the qualifications set forth in the constitution are exclusive, and in modifying and imposing qualifications for office beyond those contained in the constitution, the statute is unconstitutional.  As support for his position, he relied heavily on this Court's holding in *Cathcart* that § 22-5-103(ii) and (iii), the provisions placing term limits on state legislators, were unconstitutional.  He further asserted that he has a fundamental right to seek election to the office of secretary of state which the statute prevents him from exercising.

[¶9]  In its answer to the complaint, the State asserted the qualifications set forth in the constitution are not exclusive and the electorate and legislature acted within their authority in imposing additional statutory qualifications.  The State also asserted Mr. Maxfield's complaint did not present a justiciable controversy because he did not state that he actually intends to seek election to a third term; therefore, he had not shown that the statute affects an existing and genuine right.  Arguing that Mr. Maxfield's claim is theoretical because the remedy he seeks is for a potential future harm that is not certain to occur, the State contended he did not have standing to pursue his claim.

[¶10]  Subsequently, Mr. Maxfield and the State filed motions asking the district court to certify the issues to this Court.  They also filed statements of fact and certified questions of law.  Ultimately, they were able to reach an agreement as to the certified questions and filed a stipulated motion and proposed certification order.  The district court signed the order certifying the questions to this Court. We accepted the certification.

## DISCUSSION

[¶11] The State asserts Mr. Maxfield's complaint does not present a justiciable controversy. If the State is correct, the action must be dismissed. We begin our discussion, therefore, by considering whether Mr. Maxfield presents a justiciable controversy.

### 1. *Justiciable Controversy*

[¶12] Mr. Maxfield's argument that his complaint presents a justiciable controversy is twofold. First, he asserts his claim concerns a matter of great public importance and so it is exempt from the traditional justiciability analysis. Second, he argues that even if it is not a matter of great public importance, his complaint presents a justiciable controversy because he has an existing, actual constitutional right to seek public office and § 22-5-103 prevents him from exercising that right.

[¶13] Mr. Maxfield filed his complaint pursuant to the Uniform Declaratory Judgment Act, Wyo. Stat. Ann. §§ 1-37-101 through 1-37-115 (LexisNexis 2011). Section 1-37-102 of the Act gives Wyoming courts the power to "declare rights, status and other legal relations." Section 1-37-103 provides:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Mr. Maxfield contends his right under the Wyoming Constitution to seek a third term as secretary of state is affected by § 22-5-103. His complaint, therefore, falls within the general scope of the declaratory judgment act.

[¶14] We have said:

> In order to bring a declaratory judgment action, the challenger must also be an "interested" person. *Cox v. City of Cheyenne*, 2003 WY 146, ¶ 8, 79 P.3d 500, 505 (Wyo. 2003). That is, the challenger must be involved in a justiciable controversy before declaratory relief will be granted. *Id*., ¶ 9, 79 P.3d at 505. A

5

justiciable controversy is defined as a controversy fit for judicial resolution. *Id.*

*Carnahan v. Lewis*, 2012 WY 45, ¶ 17, 273 P.3d 1065, 1071 (Wyo. 2012). The elements necessary to establish a justiciable controversy under the Declaratory Judgment Act are:

> 1. The parties have existing and genuine, as distinguished from theoretical, rights or interests.
>
> 2. The controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion.
>
> 3. It must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, or, wanting these qualities to be of such great and overriding public moment as to constitute the legal equivalent of all of them.
>
> 4. The proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues.

*Id.*; *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974).

[¶15] Mr. Maxfield contends that his complaint is exempt from these requirements because it concerns issues of great public importance, i.e., his right to be a candidate for secretary of state and the right of Wyoming citizens to vote for him. Indeed, this Court has said "the right to seek election for a public office for which [one has] proper qualifications . . . is a valuable and fundamental right" and "is certainly a matter of 'great overriding public moment.'" *Brimmer*, 521 P.2d at 578-79, quoting *Williams v. Rhodes*, 393 U.S. 23, 89 S. Ct. 5, 10, 21 L. Ed. 2d 24. More recently we said the right is "so fundamental and of such great public interest and importance that the rule requiring the existence of a justiciable controversy should be relaxed or should not be followed." *Cathcart*, ¶ 27, 88 P.3d at 1062.

6

[¶16] While recognizing our precedent, the State maintains that whether or not the issue is one of great public importance Mr. Maxfield still must show the right he seeks to have declared is actual and existing as opposed to theoretical and uncertain. Absent a declaration by Mr. Maxfield that he intends to run for secretary of state in 2014, the State asserts this Court cannot decide the issue presented because we are without authority to determine future or contingent rights. The State cites *White v. Board of Land Comm'rs*, 595 P.2d 76, 79 (Wyo. 1979) and *Anderson v. Wyo. Dev. Co.*, 60 Wyo. 417, 154 P.2d 318, 342 (1944) as support for its assertion.

[¶17] In *White*, the state land board issued a ruling that a private landowner who leased water rights on state school lands had a preferential right to purchase the lands at an upcoming public auction. The board later brought a declaratory judgment action seeking a determination that its ruling was incorrect and the landowner did not have a preferential right. This Court held there was no justiciable controversy because the board was seeking an advisory opinion about the validity of its own ruling. The Court also found there was no justiciable controversy because the auction had not yet been held and thus it was not certain the landowner would attempt to exercise any preferential right he might have.

[¶18] No claim was made in *White* that the matter at issue in the declaratory judgment action was one of great public importance; therefore, the Court did not consider whether the rule requiring an actual existing harm should be relaxed in that context. Likewise, in *Anderson*, there was no discussion of the courts' power to decide issues of great public importance in cases where a showing of actual existing harm cannot be made. In *Eastwood v. Wyoming Highway Department*, 76 Wyo. 247, 301 P.2d 818 (1956), however, this Court made clear that the requirement of a justiciable controversy may be relaxed in cases involving matters of sufficient public interest.

[¶19] The state motor vehicle division revoked Mr. Eastwood's driver's license after he was involved in a car crash. *Id.* at 819. He brought an action in district court to set aside the statute allowing revocation on the ground that it violated due process and other rights guaranteed by the state constitution. *Id.* at 818. The district court certified the question to this Court. By the time the question was before this Court, the revocation period had expired, making the question moot. *Id.* at 819. The Court concluded the question was of sufficient public interest and importance and answered the question anyway. *Id.*

[¶20] Subsequently, in *Brimmer*, 521 P.2d at 578, this Court reiterated that the requirement of a justiciable controversy can be relaxed in cases involving matters of great public interest or importance. The attorney general's office had issued an opinion denying, or at least placing in question, the right of a sitting full term state

senator to be a candidate for governor. *Id*. at 576. Finding that the attorney general opinion interfered "with the free and untrammeled choice of every elector in the State of Wyoming," the Court concluded the matter was of great public importance justifying relaxing the justiciable controversy requirement. *Id*. at 578. *See also Pioneer Nat'l Title Ins. Co. v. Langdon*, 626 P.2d 1032, 1034 (Wyo. 1981), reiterating that "a case may be decided absent a present factual controversy, where there is an ongoing dispute of great public importance" but concluding the issue presented there was not of sufficient public importance to justify considering it. Most recently, in *Cathcart*, ¶ 12, 88 P.3d at 1058, we reaffirmed that the justiciable controversy requirement can be relaxed where matters of great public interest or importance are involved.

[¶21] Given this precedent, we reject the State's argument that whether or not the issue is one of great public importance Mr. Maxfield still must show the right he seeks to have declared is actual and existing as opposed to theoretical and uncertain. Mr. Maxfield's claim that § 22-5-103 violates his right to be a candidate for secretary of state involves a matter of great public importance and the usual requirements for showing a justiciable controversy may be relaxed.

[¶22] Even without our conclusion that Mr. Maxfield's complaint involves a matter of great public importance, we would hold that the case presents a justiciable controversy. This Court recognized in *Brimmer,* 521 P.2d at 578, and reiterated in *Cathcart,* ¶ 12, 88 P.3d at 1058, that qualified persons have a genuine and existing right to seek election for public office. Contrary to the State's assertion, the holding in those cases did not depend on the legislators having stated their intention to run. In *Brimmer*, 521 P.2d at 576, one of the senators alleged only that the attorney general opinion at issue cast doubt about whether he would be allowed to run. There was no suggestion by this Court that he had to allege that he actually intended to run in order to present a justiciable controversy. Similarly, the Court in *Cathcart* did not discuss in the context of determining whether a justiciable controversy existed any necessity of alleging an intention to run for public office. The actual and existing right recognized in those cases as presenting a justiciable controversy is the right of a qualified person to seek election to public office.

[¶23] As further support for its assertion that Mr. Maxfield's claim is too theoretical and uncertain to establish a justiciable controversy the State cites *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, 206 P.3d 722 (Wyo. 2009). There, private landowners brought a declaratory judgment action against the state engineer and state board of control, challenging their administration of underground water produced and stored as part of coal bed methane extraction. We held the controversy was not justiciable in part because,

> [the landowners] have failed to allege a connection between a specific constitutional or statutory obligation with which the State has failed to comply and a particular harm they, as individuals, have suffered or will certainly suffer in the future. As such, they have not shown that a judicial declaration requiring the State to undertake a particular function will have a practical effect on them.

*Id.*, ¶ 2, 206 P.3d at 725.[1]

[¶24] Unlike the landowners in *West Ranch*, Mr. Maxfield has alleged a connection between a specific statutory provision—§ 22-5-103—and the particular harm he will suffer—being precluded from seeking a third term as secretary of state. Under the four element test this Court adopted in *Brimmer*, Mr. Maxfield's complaint presents a justiciable controversy. He has served two terms as secretary of state for Wyoming and meets the qualifications contained in the state constitution for holding that office. That is, he has attained the age of twenty-five years, is a citizen of the United States and has the qualifications required of state electors. His right to seek a third term as secretary of state is impeded by § 22-5-103. A judgment declaring that § 22-5-103 is, or is not, constitutional will operate to determine whether he is entitled to seek a third term as secretary of state and will act as a final judgment upon his rights. The proceedings are genuinely adverse in character—Mr. Maxfield is prohibited by § 22-5-103 from seeking a third term. Mr. Maxfield's complaint satisfies the four elements necessary to establish a justiciable controversy. *Brimmer*, *supra*.

### 2. Constitutionality of § 22-5-103

[¶25] Mr. Maxfield contends the qualifications for statewide elected officials found in the Wyoming Constitution are exclusive; therefore, § 22-5-103, which modifies and adds to those qualifications, is unconstitutional. He cites *Cathcart* as support for his assertion. The State maintains the statute is constitutional. It asserts Article 4 § 11 sets forth the minimum qualifications for statewide elected officials and nothing in its language suggests the framers intended those qualifications to be exclusive or to preclude the citizens or the legislature from imposing additional qualifications. The State submits that *Cathcart* was wrongly decided.

---

[1] In addition, we held that declaratory judgment was not available because the landowners had not utilized available administrative processes to resolve their concerns. *Id.* That portion of *West Ranch* has no application here where administrative review is not an option.

9

[¶26] Because *Cathcart* is at the heart of the present controversy, we begin our discussion there. In *Cathcart*, two incumbent state legislators and two electors challenged the constitutionality of § 22-5-103, arguing that it improperly added qualifications for holding legislative office to the qualifications found in art. 6, §§ 2 and 15, art. 3, § 2 and art. 4, §§ 2 and 11 of the Wyoming Constitution. *Cathcart*, ¶ 1, 88 P.3d at 1054. Countering those arguments, the State argued the rights reserved to the people in Wyo. Const. art. 1, § 1 are superior to the rights enumerated in the constitution, meaning the people and their representatives have the authority to enact laws adding to or changing the rights set forth in the constitution. *Id.*, ¶ 42, 88 P.3d at 1066. The State also asserted the qualifications for holding legislative office enumerated in the constitution were intended to be minimum rather than exclusive requirements which could be modified by legislative enactment.

[¶27] The Court concluded that while Wyo. Const. art. 1, § 1 recognizes the ultimate right of the people to "alter, reform or abolish" government, that right must be exercised in accordance with the constitution. *Id.*, ¶ 44, 88 P.3d at 1067. Reading art. 1, § 1 *in pari materia* with other relevant constitutional provisions, we concluded the framers intended that laws altering the government would be adopted only through constitutionally established means. *Id*. The means agreed upon in the constitution is the amendment process. *Id*.

[¶28] We then considered the nature and extent of the legislature's authority under the Wyoming Constitution. *Id.*, ¶ 45, 88 P.3d at 1067. We cited precedent establishing that rather than granting power, the constitution limits legislative power and authorizes the enactment of only such laws as are not expressly or inferentially prohibited by the constitution. *Id*. We then considered whether the provisions enumerating the qualifications for holding legislative office were ambiguous. *Id.*, ¶ 46, 88 P.3d at 1067. Applying our usual rules of constitutional interpretation, we found those provisions to be clear and unambiguous and turned to the real question before us—whether the constitutional qualifications were meant to be exclusive. *Id.*, ¶ 47, 88 P.3d at 1068.

[¶29] In answering that question, we looked to Wyo. Const. art. 1, § 3 which states:

> **§ 3. Equal political rights.**
> Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, ***or any circumstance or condition whatsoever other than individual***

10

> ***incompetency, or unworthiness duly ascertained by a
> court of competent jurisdiction.***

(Emphasis added.) We concluded the highlighted language "leaves no doubt that *no law*—whether enacted by the legislature through the legislative process or by the people through the initiative process—may condition 'political rights and privileges' upon a 'circumstance or condition' such as incumbency." *Cathcart*, ¶ 47, 88 P.3d at 1068. As recognized in Wyo. Const. art. 6, § 1, "holding office" is one of those "political rights and privileges" not subject to a "circumstance or condition" such as incumbency. From the unambiguous constitutional language, we concluded the framers did not intend to allow the legislature by statute or the electorate by initiative to add qualifications for holding legislative office to those enumerated in the constitution. Finding that § 22-5-103(ii) and (iii) added incumbency as a condition other than those specifically enumerated in art. 1, § 3, we held those provisions to be unconstitutional.

[¶30] In *Cathcart*, the State argued the constitution was silent as to term limits; if the framers intended term limits to be the exclusive province of the constitution they would have said so; and interpreting the constitutional provisions as exclusive would be reading words into the constitution that were not there. We rejected those arguments in part because the constitution as originally written by the framers was not silent concerning term limits. As it appeared originally, Wyo. Const. art. 4, § 11 stated:

> There shall be chosen by the qualified electors of the state at the times and places of choosing members of the legislature, a secretary of state, auditor, treasurer, and superintendent of public instruction, who shall have attained the age of twenty-five years respectively, shall be citizens of the United States, and shall have the qualifications of state electors. They shall severally hold their offices at the seat of government, for the term of four (4) years and until their successors are elected and duly qualified, ***but no person shall be eligible for the office of treasurer for four (4) years next after the expiration of the term for which he was elected.*** The legislature may provide for such other state officers as are deemed necessary.

(Emphasis added.) Wyo. Const. art 4, § 11 (1890) (amended 1982). Considering that provision as drafted by the framers, we said:

11

Clearly, the framers of the state constitution knew and used the necessary language to establish term limits. That they did not use that language in Wyo. Const. art. 3, § 2, addressing the qualifications and term for legislators, is telling.

*Cathcart*, ¶ 58, 88 P.3d at 1072.

[¶31] The State concedes there is no meaningful distinction between the provisions we considered in *Cathcart* and those before us today and that it can succeed on its claim only if *Cathcart* is reversed. Urging such reversal, the State reiterates many of the same arguments it made in *Cathcart*. It argues, for example, that art. 4, § 11 sets out only minimum qualifications for holding one of the state-wide offices and is ambiguous about whether those qualifications are exclusive. It asserts that if the framers had intended the enumerated qualifications to be exclusive and to preclude the adoption of additional qualifications, they would have said so. It asserts the framers knew how to write exclusive provisions as shown in art. 6, § 2, which provides that everyone who satisfies the enumerated qualifications can vote and then expressly limits those who cannot vote to anyone who does not meet the art. 6, § 2 qualifications *or as provided elsewhere in the constitution.* If the framers intended the constitutional qualifications for holding office to be exclusive, the State asserts, they would have included similar language somewhere in the constitution making them so.

[¶32] The State submits the Court in *Cathcart* "did not fully account for the heart and spirit of our constitution" as stated in art. 1, § 1:

> All power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of these ends they have at all times an inalienable and indefensible right to alter, reform or abolish the government in such manner as they think proper.

The State urges the Court to consider this provision in deciding whether the framers really intended to preclude the people from setting qualifications for office by limiting the qualifications exclusively to those enumerated in the constitution.

[¶33] Finally, the State asserts the Court in *Cathcart* did not consider the following introductory language of art. 1, § 3: "Since equality in the enjoyment of natural and civil rights is made sure only through political equality . . . ." The State submits this language makes clear the framers' intent to ensure equality in

natural and civil rights by ensuring political equality. In ensuring equality, the State argues, the framers were focused on groups of citizens with certain immutable characteristics who needed protection. Thus, as reflected in art. 1 § 3, the framers sought to ensure that laws affecting political rights and privileges "shall be without distinction of race, color, sex . . . ." The State argues the framers intended the provision to preclude laws depriving a person entirely from holding office for reasons like race, color, sex or other conditions relating to a person, not an office. Because § 22-5-103 precludes Mr. Maxfield only from holding the specific office of secretary of state, and not his general right to hold office, and because it does so based upon the fact that he has already served two terms as secretary of state and not on the basis of his race, color, sex or any other condition relating to his person, the State contends it does not violate the constitution.

[¶34] The express, unambiguous language of art. 1, § 3 convinces us otherwise. The words "or any circumstance or condition whatsoever other than individual competency, or unworthiness duly ascertained by a court of competent jurisdiction" could not be more clear. Together, art. 1, § 3 and art. 6, § 1 clearly provide that laws affecting the political rights and privileges of Wyoming citizens, such as the right to hold public office, may not be based upon race, color, sex or *any circumstance or condition whatsoever other than* those conditions expressly stated. Incumbency is not one of the conditions expressly stated. To read the provision as the State would have us do would be either to read the highlighted words out of the provision completely, or to interpret them as modifying the words "race, color, sex" and meaning "*like or similar* circumstance or condition." The broad language used by the framers does not support either reading.

[¶35] We conclude today, as we did in *Cathcart*, that art. 1, § 3 prohibits the passage of any law conditioning political rights and privileges upon a circumstance or condition other than those enumerated. One such political right is the right to hold office. Because § 22-5-103 conditions the right to hold the office of secretary of state on incumbency, which is not one of the circumstances or conditions enumerated, it is unconstitutional.

[¶36] We further conclude Wyo. Const. art. 4, § 11 is unambiguous. To be elected to serve as secretary of state, one must be at least twenty-five years old, a citizen of the United States and have the qualifications of state electors. The provisions setting forth the qualifications of state electors are equally unambiguous. Pursuant to art. 6, § 2, electors must be citizens of the United States, at least twenty-one years old, have resided in Wyoming for one year and have resided in the county of residence sixty days before the election. Art. 6, § 5 also provides that only United States citizens are qualified to be electors in Wyoming. Art. 6, § 19 prohibits those holding certain federal offices from

13

simultaneously holding a state office. Mr. Maxfield meets these qualifications and is entitled to seek the office of secretary of state.

[¶37] In *Cathcart*, we expressly did not address the constitutionality of the term limit statute as it affects the qualifications for secretary of state, auditor, treasurer and superintendent of public instruction found in Wyo. Const. art. 4, § 11, nor did we address the qualifications for governor found in Wyo. Const. art. 4, § 2. Citing the rule that the constitutionality of a statute may be questioned only by a party whose rights are affected by it, and that a party cannot assert that a statute is unconstitutional as to other persons, we limited our holding to the provisions involving legislative qualifications. *Cathcart*, ¶ 37, 88 P.3d at 1064. Similarly, we limit our holding in the present case to the question of whether § 22-5-103 is unconstitutional as it relates to the qualifications found in Wyo. Const. art. 4, § 11. We decline Mr. Maxfield's invitation to address the qualifications for governor.

[¶38] Answering the first certified question, we hold that Mr. Maxfield has presented a justiciable controversy. Answering the second certified question, we hold that § 22-5-103(a)(i), the term limit law for statewide elected officials, is unconstitutional with respect to the offices of secretary of state, auditor, treasurer, and superintendent of public instruction and the qualifications for those offices provided by the Wyoming Constitution are exclusive.