# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 127

**OCTOBER TERM, A.D. 2025**

**December 2, 2025**

CHRISTOPHER WILLIAMS; AMY
WILLIAMS; CINDY BARLOW;
CHARLES HUSON; LOIS HUSON;
MARIANNE FERRARI; and SHARON
SMALLWOOD,

Appellants
(Plaintiffs),

v.

BOARD OF COUNTY
COMMISSIONERS OF JOHNSON
COUNTY; WYOMING DEPARTMENT
OF AUDIT; and JUSTIN CHAVEZ, in
his official capacity as Director of the
Wyoming Department of Audit,

Appellees
(Defendants).

S-25-0093

*Appeal from the District Court of Johnson County*
*The Honorable Darci A.V. Phillips, Judge*

*Representing Appellants:*
Cassie Craven, Longhorn Law Limited Liability Company, Cheyenne, Wyoming.
Argument by Ms. Craven.

*Representing the Wyoming Department of Audit and Justin Chavez:*
Keith G. Kautz, Attorney General; Karl D. Anderson, Senior Assistant Attorney
General; Devin Thomas Kenney. Argument by Mr. Kenney.

*Representing the Board of County Commissioners of Johnson County:*

Mitchell H. Edwards, Nicholas & Tangeman, LLC., Laramie, Wyoming. Argument by Mr. Edwards.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ.; and CAUSEY, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]    Christopher Williams, Amy Williams, Cindy Barlow, Charles Huson, Lois Huson, Marianne Ferrari, and Sharon Smallwood (Appellants) brought this declaratory action against the Board of County Commissioners of Johnson County (the Board) and the Wyoming Department of Audit and its Director, Justin Chavez (collectively, the Department). They sought declarations that the Board had failed to properly manage its finances and adhere to proper auditing procedures, and that the Department had failed to ensure the Board's compliance with the required procedures. The district court concluded Appellants lacked standing and granted the Board's and the Department's motions to dismiss. We affirm.

## *ISSUE*

[¶2]    The sole issue in this case is whether Appellants have standing to pursue this declaratory judgment action.

## *FACTS*

[¶3]    Appellants are residents, property owners, and taxpayers in Johnson County, Wyoming. This controversy began, as far as the record reveals, when one of the Appellants, Mr. Williams, made a public records request to Johnson County. When his request was fulfilled, Mr. Williams, who has auditing experience, discovered what he believed to be "many illegalities contained within the Johnson County audits." He discussed these concerns with the Director of the Department over emails and one in-person meeting. Communication eventually stagnated, and Appellants brought this declaratory action.

[¶4]    Appellants' complaint is separated into ten counts, each alleging a violation of Wyoming law by the Board, the Department, or both.

- Count I alleges that the Board violated Wyo. Stat. Ann. § 16-4-105 (2023) by using general cash reserve funds to cover increases in health insurance costs and state-required pension obligations.
- Counts II-III allege that the Board violated Wyo. Stat. Ann. § 16-4-108 (2023) by making numerous transfers in excess of appropriated amounts and the Department violated Wyo. Stat. Ann. § 9-1-507 (2023) by failing to issue corrections or instructions "for these annual ongoing violations of Wyoming statute."
- Count IV alleges that the Board and the Department violated Wyo. Stat. Ann. § 16-4-120 (2023) based on the county's failure to maintain a uniform system of accounting in accordance with generally accepted principles of accounting and the Department's failure to correct or instruct the county to correct this error.

1

- Count V alleges that the Department violated Wyo. Stat. Ann. § 16-4-123 (2023) by failing to require the county to correct its audit reports or to refer alleged violations of state law contained in the audit reports to the attorney general.
- Count VI alleges that the Board violated Article 16, section 6 of the Wyoming Constitution by distributing "$182,192 in 'charitable relief' in fiscal year 2021." The funds in question were federal awards provided for COVID-19 relief, and the complaint alleges that the procedure for distribution of these funds was deficient and not supported by appropriate documentation.
- Counts VII–VIII allege that the Department "failed to uphold the requirements" of Wyo. Stat. Ann. § 9-1-507 by failing to correct the county's accounting and auditing errors.
- Count IX alleges that the Department "failed to uphold the requirements" of Wyo. Stat. Ann. § 9-1-510 (2023) because the county was "routinely tardy" in its yearly reporting requirements to the Department.
- Count X alleges that the Department violated Wyo. Stat. Ann. § 16-4-121 (2023) by failing to contract with an independent auditor when the county's audits were late in some fiscal years.

Appellants sought a declaration that the Board and the Department had violated the statutes as alleged. They also sought "oversight and direction" by the district court, including a "forensic audit . . . to determine if fraud has occurred and the effectiveness of all internal controls of Johnson County." (footnote omitted). They also requested attorney fees and costs and damages.

[¶5]   Appellants alleged they had standing to pursue this action because they "are impacted taxpayers who have experienced tangible damage and loss as a result of the actions and inactions occurring in Johnson County." (footnote omitted). They asserted they were "impacted through higher property taxes, licensure fees, and sales tax as a direct result of budget impacts due to the described illegalities."

[¶6]   The Board and the Department moved to dismiss the action, claiming Appellants lacked standing. They argued that Appellants lacked prudential standing, statutory standing, and taxpayer standing, and were improperly seeking to act as private attorneys general. The district court granted the motions to dismiss. This appeal followed.

### STANDARD OF REVIEW

[¶7]   The district court dismissed Appellants' complaint for lack of standing.[1] We review an order granting a motion to dismiss de novo, examining the same materials and

---

[1] We take this opportunity to reiterate the jurisprudential, as opposed to jurisdictional nature of standing under Wyoming law. In dismissing Appellants' complaint, the district court concluded Appellants' lack

following the same standards as the district court. *Protect Our Water Jackson Hole v. Wyo. Dep't of Env't Quality*, 2025 WY 36, ¶ 11, 566 P.3d 181, 185 (Wyo. 2025). We take the facts alleged in the complaint as true and view them in the light most favorable to the non-moving party. *Id.* We may affirm a dismissal on any basis supported by the record. *Id.*

[¶8]   Whether dismissal was proper in this case hinges on whether Appellants have standing. "The existence of standing is a legal issue reviewed de novo." *Id.* (quoting *N. Silo Res., LLC v. Deselms*, 2022 WY 116A, ¶ 51, 518 P.3d 1074, 1089 (Wyo. 2022)).

## DISCUSSION

[¶9]   The standing doctrine is rooted in separation of powers principles. *Allred v. Bebout*, 2018 WY 8, ¶ 30, 409 P.3d 260, 268 (Wyo. 2018). "It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996)). In respect of these separate roles, we have acknowledged that it "is not the function of the judicial branch to pass judgment on the general performance of other branches of government." *William F. West Ranch, LLC v. Tyrell*, 2009 WY 62, ¶ 32, 206 P.3d 722, 733 (Wyo. 2009). Thus, a plaintiff seeking judicial relief must present the court with a live controversy that implicates his rights in a way the court can effectively remedy.

[¶10]  Appellants sought judicial relief under the Uniform Declaratory Judgments Act. To pursue a declaratory judgment action, a plaintiff must be an "interested" person. Wyo. Stat. Ann. § 1-37-103 (2025). To determine whether a plaintiff is "interested," we apply our prudential standing test,[2] also known as the *Brimmer* test:

---

of standing deprived the court of subject matter jurisdiction. In *Matter of Adoption of L-MHB*, we clarified that "[t]he Wyoming Constitution does not make standing jurisdictional; nor do Wyoming Statutes, absent express language or clear indicia of intent to the contrary." 2018 WY 140, ¶ 24, 431 P.3d 560, 568 (Wyo. 2018). Where a party lacks standing, his "claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Id.*, ¶ 20, 431 P.3d at 567 (quoting *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011)). Prior to *L-MHB*, we had occasionally and imprecisely referred to standing as having jurisdictional significance. 2018 WY 140, ¶ 18, 431 P.3d at 566–67. Since then, however, we have more faithfully adhered to our recognition of standing as a jurisprudential rule. *See, e.g.*, *Protect Our Water Jackson Hole v. Wyo. Dep't of Env't Quality*, 2025 WY 36, ¶ 11 n.2, 566 P.3d 181, 185 n.2 (Wyo. 2025); *Matter of Estate of Stanford*, 2019 WY 94, ¶ 9, 448 P.3d 861, 864 (Wyo. 2019). The district court's characterization of standing as a jurisdictional bar has no bearing on our analysis in this case, since we may affirm on any basis. *Protect Our Water Jackson Hole*, 2025 WY 36, ¶ 11, 566 P.3d at 185.

[2] "Statutory standing is a close cousin of prudential standing, and looks to whether '*this* plaintiff has a

3

First, a justiciable controversy requires parties having existing and genuine, as distinguished from theoretical, rights or interests. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument evoking a purely political, administrative, philosophical or academic conclusion. Third, it must be a controversy the judicial determination of which will have the force and effect of a final judgment in law or decree in equity upon the rights, status or other legal relationships of one or more of the real parties in interest, ***or, wanting these qualities be of such great and overriding public moment as to constitute the legal equivalent of all of them***. Finally, the proceedings must be genuinely adversary in character and not a mere disputation, but advanced with sufficient militancy to engender a thorough research and analysis of the major issues. Any controversy lacking these elements becomes an exercise in academics and is not properly before the courts for solution.

*Allred*, 2018 WY 8, ¶ 37, 409 P.3d at 270 (Wyo. 2018) (emphasis added) (quoting *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974)).

[¶11] Appellants assert this case presents a matter of great public importance and therefore they have standing. Though we have acknowledged that the standing requirements may be relaxed when a case presents a matter of great public interest or importance, *William F. West Ranch, LLC*, 2009 WY 62, ¶ 46, 206 P.3d at 737, over time we have ensured that we do not wholly abandon the standing requirements simply because a case presents a matter of great public interest or importance:

> [W]e have retreated from [a] liberal application of the public interest factor. In *William F. West Ranch*, we acknowledged that the plaintiffs had a tangible interest affected by coal bed methane water and thus, they satisfied the first *Brimmer* element. However, we held that they failed to "demonstrate that the controversy is one upon which a judgment of the

---

cause of action under the statute . . . .'" *L-MHB*, 2018 WY 140, ¶ 20 431 P.3d at 567 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998)). Appellants argued below that they also had statutory standing under the Uniform Municipal Fiscal Procedures Act. They do not make that argument on appeal, and we therefore do not address it.

court may effectively operate." *William F. West Ranch*, 2009 WY 62, ¶ 26, 206 P.3d at 731. Thus, they failed the second prong of the *Brimmer* test. We agreed that the issue there, the administration of water, was a matter of great public importance. *Id.* at ¶ 44, 206 P.3d at 736. We recognized that historically, we have relaxed our "definition of standing when a matter of great public interest or importance is at stake," *Id.* at ¶ 45, 206 P.3d at 736, or when "a constitutional question is presented." *Id.* at ¶ 45, 206 P.3d at 737. But, we stressed that "[t]his exception must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance." *Id.* (quoting *Jolley v. State Loan & Inv. Bd.*, 2002 WY 7, ¶ 10, 38 P.3d 1073, 1078 (Wyo. 2002)). We observed that "a great public interest alone is insufficient to warrant the action of the court under any situation which we might at present foresee." *William F. West Ranch*, 2009 WY 62, ¶ 46, 206 P.3d at 737 (quoting *Cranston v. Thomson*, 530 P.2d 726, 729 (Wyo. 1975)).

*Allred*, 2018 WY 8, ¶ 40, 409 P.3d at 271–72. Therefore, even where a case presents a matter of great public interest or importance, a party seeking relief under the Uniform Declaratory Judgments Act must still make a basic showing that he meets the *Brimmer* requirements for standing. *See id.*; *see also Maxfield v. State*, 2013 WY 14, ¶¶ 20–24, 294 P.3d 895, 900–01 (Wyo. 2013) (holding that the case presented a matter of public importance but concluding the plaintiff also met the requirements for standing under the *Brimmer* test). Our precedent makes clear Appellants cannot rely on public interest alone.

[¶12] The first *Brimmer* element has been described in various ways, but generally requires that a party demonstrate a personal stake in the outcome of a case. *Protect Our Water Jackson Hole*, 2025 WY 36, ¶ 14, 566 P.3d at 186 (collecting cases). It is not enough that a party cares deeply about an issue or is affected only as a member of the public at large; his interest must be distinguishable from that which could be raised by any citizen. *See Allred*, 2018 WY 8, ¶¶ 44–49, 409 P.3d at 273–74. Where a law is not directly applied to a party and he cannot otherwise demonstrate that he is particularly affected by the actions he challenges, he cannot establish the first *Brimmer* element. *See id.*, ¶ 49, 409 P.3d at 274 ("[Plaintiffs] claim no application of the statute to them, and they fail to demonstrate that they are aggrieved or adversely affected in fact."); *see also Protect Our Water Jackson Hole*, 2025 WY 36, ¶ 15, 556 P.3d at 186 (observing that standing is easiest to establish where "the plaintiff is himself an object of the action (or foregone action) at issue.") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)).

5

[¶13] Appellants have made little attempt to establish their individual or particularized interests in the Board's and the Department's adherence to the statutes at issue. Mr. Williams is the only plaintiff referenced by name outside the caption of the complaint. The complaint makes the following statements about him: 1) he "is a retired managing director in the retail financial services industry for a Fortune 500 global consulting firm, served as treasurer of his church and has vast experience reviewing audited financial reports"; 2) he reviewed Johnson County's yearly audits and "discovered, what he believes, are many illegalities"; 3) he corresponded with the Director of the Department regarding his concerns and met with the Director and another Department official at his home; and 4) he continued to request updates from the Department following the initial meeting and prior to filing this suit. As for the remaining six plaintiffs, the complaint says nothing about them or their stake in this matter except that they "are current residents, property owners and taxpaying citizens of Johnson County, Wyoming." The remainder of the complaint makes only conclusory statements about Appellants' interest in this matter:

- "The Plaintiffs have standing to proceed as they are impacted taxpayers who have experienced tangible damage and loss as a result of the actions and inactions occurring in Johnson County." (footnote omitted).
- "All Plaintiffs are sufficiently affected by the illegalities that have occurred as they have a tangible increase in personal property tax bills through the associated mill levy calculations that are a direct result of the audits and budgetary functions of the [Board]."[3]
- "The Plaintiffs have genuine rights at issue under the Wyoming Constitution and Wyoming statutes."
- "[The Board] and [the Department] are liable for these violations of law and Plaintiffs' rights and Plaintiffs seek declaratory judgment upon these claims."

[¶14] On appeal, Appellants' description of their interest is equally amorphous. They refer to their interest as a "fundamental right to protection from . . . government abuse," a "right to legal spending of their tax dollars," a "legal right to good government," and at times refer to "fundamental" or "constitutional" rights without identifying those specific rights. Appellants do not cite authority for these alleged rights, and we have not located any that describes an existing right in such a manner. Nor do Appellants offer the type of rigorous analysis our precedent mandates when a party asks us to recognize a fundamental right for the first time. *See Vaughn v. State*, 2017 WY 29, ¶ 27, 391 P.3d 1086, 1096–97 (Wyo. 2017) (cautioning restraint when courts are asked to recognize new fundamental rights).

---

[3] We discuss whether Appellants' status as taxpayers creates standing below.

6

[¶15]  We have cautioned against such conclusory allegations in attempting to establish the first element of the *Brimmer* test:

> In Appellants' brief, they again argue passionately about the importance of separation of powers, but say little about a tangible interest that has been harmed. They contend that they "have a right to protect their liberty interests by calling upon the judiciary to confine the legislature to its constitutional limits," and, they say, "[t]heir liberty interests are genuine and very personal in the assurance that the legislature adheres to the rule of law by confining itself to constitutional limits." But that conclusory statement fails to establish a tangible interest that has been harmed.

*Allred*, 2018 WY 8, ¶ 44, 409 P.3d at 273. Appellants' asserted interests in the present case are strikingly similar to those in *Allred*. While they may have a genuine and sincere desire to hold the government to a high standard of efficiency and fiscal responsibility, their concerns are no different than any resident and taxpayer of Johnson County. We do not doubt their desire for a "good government," but that desire alone does not create an interest sufficient to pursue this declaratory action. *See Protect Our Water Jackson Hole*, 2025 WY 36, ¶ 24, 566 P.3d at 188 ("The plaintiff in a declaratory judgment action remains affirmatively obligated to demonstrate in its complaint that it has standing. This includes an obligation to demonstrate a tangible interest which has been harmed.") (citation modified). And while "government abuse" might create an interest where an individual is the direct object of such abuse, Appellants have made no allegations that they are impacted by the alleged violations except as taxpayers and residents of Johnson County. We therefore turn to whether Appellants have established standing as taxpayers.

[¶16]  We initially note that "we have not yet expressly recognized taxpayer standing in Wyoming, although we have suggested in dicta that a taxpayer is not entitled to maintain a proceeding for a declaratory judgment in the absence of any showing that the statute, ordinance, or act being questioned will increase the taxpayer's burden as a taxpayer." *Allred*, 2018 WY 8, ¶ 32, 409 P.3d at 269 (citation modified) (quoting *Village Rd. Coal. v. Teton County Hous. Auth.*, 2013 WY 38, ¶ 16 n.2, 298 P.3d 163, 169 n.2 (Wyo. 2013)). In *Allred*, we declined to consider recognizing taxpayer standing absent an allegation that the challenged action increased a party's burden as a taxpayer. 2018 WY 8, ¶ 32, 409 P.3d at 269. We do the same here.

[¶17] We acknowledge that Appellants' complaint included an allegation that the Board's and the Department's actions have created a "tangible increase" in Appellants' tax obligations. However, this is a mere conclusion unsupported by the actual facts Appellants alleged in their complaint. Appellants' allegations relate to the spending and monitoring of tax dollars; they say nothing about their collection. They suggest that if the

7

Board and the Department corrected the alleged errors, their taxes would necessarily be lower. But the only taxes they suggest might be lower are imposed at the discretion of the Board or require the approval of the voters.[4] Appellants rely on speculation about what the Board and Johnson County voters *might* do in a scenario where the county's financial management is to Appellants' satisfaction. Even when viewing the allegations in the light most favorable to Appellants, standing requires "a 'perceptible' rather than a 'speculative' harm." *The Tavern, LLC v. Town of Alpine*, 2017 WY 56, ¶ 33, 395 P.3d 167, 176 (Wyo. 2017) (quoting *Carnahan v. Lewis*, 2012 WY 45, ¶ 26, 273 P.3d 1065, 2073 (Wyo. 2012)). Appellants have shown no more than a speculative possibility of harm.

[¶18]  To summarize, Appellants have not established a deprivation of a recognized right or that they are particularly harmed by the violations of law they allege. Nor have they alleged a type of harm as taxpayers that would compel us to consider recognizing taxpayer standing. Assuming this matter is, as Appellants allege, one of great public importance, their inability to demonstrate a tangible interest that has been harmed is fatal to their claim of standing in this case. Their lack of such an interest means they are also without a remedy, as "a judicial decision cannot remedy a nonexistent harm." *Allred*, 2018 WY 8, ¶ 50, 409 P.3d at 274 (quoting *Village Rd. Coal.*, 2013 WY 38, ¶ 16, 298 P.3d at 169 (Wyo. 2013)). Likewise, because Appellants have not established a tangible interest that has been harmed, they cannot show that a final judgment in this matter would operate upon their rights. *See Allred*, 2018 WY 8, ¶ 53, 409 P.3d at 276 ("We have determined that these parties have not alleged 'rights, status or other legal relationship,' because they have not asserted either injury or redressability."). And no amount of "militancy with which the parties advance their positions can . . . suffice to overcome the absence of the other prongs of justiciability." *Id.*, ¶ 54, 409 P.3d at 276. Appellants have failed to establish each element of the *Brimmer* test, and any public interest presented by this case does not outweigh our interest in adhering to our long-established standing requirements. *See id.*, ¶¶ 37–43, 409 P.3d at 270–74.

[¶19]  Affirmed.

---

[4] The number of mills levied upon the taxable value of property is largely fixed by statute. *See* Wyo. Stat. Ann. § 39-13-104 (2025). The Board has discretion to levy up to an additional twelve mills for a variety of purposes listed by statute. *See id.* § 39-13-104(b)(i). Local excise taxes cannot be increased without the approval of the qualified electors of the county. *See* Wyo. Stat. Ann. § 39-15-203(a)(i)(B).